OPINION
{¶ 1} These consolidated appeals involve multiple counts of aggravated robbery, robbery, kidnapping, and receiving stolen property. For the following reasons, we affirm the judgments of the trial court.
 {¶ 2} In case No. 05AP-55, appellant, Donald K. Haines, was indicted on a variety of felony charges stemming from two separate aggravated robberies of a Kroger store located in the Worthington Square Shopping Center, in Worthington, Ohio. The Kroger robberies took place on December 23, 2003 and again on January 2, 2004.
 {¶ 3} In case No. 05AP-56, appellant was indicted on felony charges arising from an aggravated robbery that took place at Wendy's Restaurant in Delaware County, Ohio, on December 24, 2003.
 {¶ 4} In each incident, appellant wore a disguise. He appeared as Santa Claus while robbing the Worthington Kroger store on December 23, and while robbing the Wendy's Restaurant the next day. On January 2, 2004, he robbed the same Kroger's store for the second time, this time dressed as a chicken.
 {¶ 5} During the robberies, appellant carried a firearm, announced he was armed and threatened employees.[1] The robber was seen driving off in a van.
 {¶ 6} Columbus Police and the Federal Bureau of Alcohol, Tobacco and Firearms ("ATF") conducted a joint investigation of the robberies. The joint task force investigated multiple robberies that appeared to be carried out by the same person or persons.
 {¶ 7} Appellant was a former employee of the Worthington Kroger store. During the Kroger robberies, appellant demanded money and an employee recognized appellant's voice.
 {¶ 8} In a video surveillance tape recording of the second Kroger robbery, the robber was wearing a yellow wig with his chicken costume. When investigators learned that appellant had a band and maintained a web site on the Internet, they compared the images of the robber from the video surveillance tape with images found on appellant's web site. The yellow wig worn by the robber in the January 2, 2004 Kroger robbery appeared to be the same yellow wig shown on appellant's web site.
 {¶ 9} On January 22, 2004, search warrants were issued by a judge of the Franklin County Municipal Court.[2] The warrants authorized the chief of police of the city of Columbus to search two vans owned by appellant and appellant's home for evidence of the crimes. The search warrants were executed the next day by Columbus Robbery Squad Detective Gregory Franken, assisted by members of the robbery task force including ATF agents.
 {¶ 10} During the Kroger robberies, the robber fled with five cash register drawers or tills, and a number of books of United States postage stamps. The cash register tills, receipts from the Kroger store, and 35 books of postage stamps were recovered from appellant's home in Hilliard, Ohio, a suburb of Columbus, pursuant to a search warrant. Law enforcement officers also found a handgun, a receipt showing that ammunition had been purchased the day before the first robbery, a Santa Claus suit, and parts of a chicken costume. Pursuant to a second warrant, investigators found a yellow wig in one of appellant's vans.
 {¶ 11} Appellant was arrested at his home on January 23, 2004, during the execution of the search warrants. The warrants and the return of the warrants were filed the same day.
 {¶ 12} On April 21, 2004, counsel for appellant filed a motion to suppress all evidence seized pursuant to the warrants. The motion argued that the evidence was subject to suppression because the warrants authorized search and seizure by the chief of police of Columbus, Ohio, but were executed by federal ATF agents.
 {¶ 13} On August 18, 2004, the trial court conducted an evidentiary hearing on the motion to suppress. The testimony showed that Detective Franken executed the warrants with the assistance of Hilliard police and federal ATF agents. Copies of the warrants were left at the scene of the search as provided by Crim.R. 41(D). The court denied the motion to suppress.
 {¶ 14} While the two cases were pending, against the advice of counsel, appellant wrote a number of letters to the court and to the assistant prosecuting attorneys who represented the state. Appellant expressed remorse for his crimes, noted his lack of previous criminal record, and stressed what he felt were his positive attributes.
 {¶ 15} Trial was scheduled for October 25, 2004. On the date of trial, appellant asked that his trial attorney be replaced. Appellant stated that he did not want a trial, was remorseful and had never been in trouble before. Appellant stated his attorney had been professional in his representation, but had counseled appellant against making admissions when appellant wanted to admit the crimes. (Oct. 25, 2004, Tr. 3-5.) Appellant went on to admit he committed the crimes, and offered mitigating circumstances for his acts. (Oct. 25, 2004, Tr. 6-11.) Appellant asked for additional time to seek a better plea offer from the prosecution. The court agreed and recessed the proceedings but cautioned appellant that, after the recess, he would have to advise the court whether he wished to proceed with a trial or enter a guilty plea. (Oct. 25, 2004, Tr. 11-18.)
 {¶ 16} Following the recess, the trial court asked appellant how he wished to proceed. Appellant reiterated that he did not want a trial, but asked for more time to consider his options. He repeated his hope that the prosecution would offer a better plea bargain to resolve the cases. (Oct. 25, 2004, Tr. 19-22.) At one point, appellant stated: "I'm still thinking about the option of whether or not I want to hire a different attorney. I do have the option, I think, to fire Mr. Settina and file two other motions to suppress evidence."[3] (Oct. 25, 2004, Tr. 22.) When the court declined to continue the case further, appellant returned to his theme of mitigating circumstances and attempted to plea bargain with the prosecution. (Oct. 25, 2004, Tr. 23-34.) The hearing ended when appellant stated: "I would like to have these motions filed, so I guess we'll just continue it. I need a different attorney. I need a different attorney." (October 25, 2004, Tr. 35.)
 {¶ 17} On November 1, 2004, the cases were again before the trial court. Counsel advised the court that appellant continued to differ with counsel's professional opinion that there was no good-faith basis to file additional motions to suppress evidence. Appellant insisted that additional motions to suppress evidence should be filed. "I indicated I would like to have those motions filed. If I'm representing myself, I should be able to file those motions." (Nov. 1, 2004, Tr. 4.)
 {¶ 18} The court asked appellant whether he intended to proceed with counsel or proceed on his own behalf. Rather than respond directly, appellant returned to his attempt to plea bargain and his insistence that his motions to suppress be filed. (November 1, 2004, Tr. 4-10.)
 {¶ 19} Voir dire of the prospective jurors was conducted. At the conclusion of voir dire, counsel for appellant advised the court that appellant had decided to enter a no contest plea to the charges. Appellant gave no indication that he was dissatisfied with being represented by counsel.
 {¶ 20} The trial court conducted a hearing on the proposed plea as required by Crim.R. 11. The plea was accepted and a pre-sentence investigation ordered. (November 1, 2004, Tr. 11-26.)
 {¶ 21} Sentencing took place on December 16, 2004. The court imposed a four year sentence on each of the underlying felonies, but ordered the sentences to be served concurrently. Because there were three separate incidents in which appellant had used a firearm to commit the robberies, the court imposed an additional, mandatory nine years to be served consecutively as required by law.
 {¶ 22} Appellant raises two assignments of error:
First Assignment of Error
The trial court erred by denying Appellant's request for self-representation with [sic] conducting a meaningful hearing on his request.
Second Assignment of Error
The trial court erred by refusing to conduct a hearing on Appellant'spro se motion to suppress.
 {¶ 23} The Sixth Amendment guarantees criminal defendants the right to representation by counsel. The fundamental right to the assistance of counsel necessarily includes the right of self-representation. Farettav. California (1975), 422 U.S. 806, 95 S.Ct. 2525.
 {¶ 24} Waiver of a constitutional right must be done knowingly, intelligently, and voluntarily. Courts indulge in every reasonable presumption against waiver of a constitutional right, including the right to have the assistance of counsel in a criminal proceeding. Brewer v.Williams (1977), 430 U.S. 387, 404, 97 S.Ct. 1232.
 {¶ 25} Waiver of the right to the assistance of counsel requires a "clear and unequivocal" assertion of the right to self-representation.United States v. Frazier-El (C.A.4, 2000), 204 F.3d 553, 558, citingFaretta, supra, at 835. The requirement that a request for self-representation be clear and unequivocal is necessary to protect against inadvertent waiver of the right to counsel by a defendant. Id. at 558-559.
 {¶ 26} In addition, requiring a defendant to clearly and unequivocally waive counsel and elect self-representation, "prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation." Id. See Fields v. Murray (C.A.4, 1995), 49 F.3d 1024, 1029 (en banc); United States v. Singleton (C.A.4, 1997), 107 F.3d 1091, at 1102.
 {¶ 27} In Ohio, assertion of the right to self-representation must be unequivocal and explicit. State v. Ahmed, 103 Ohio St.3d 27,2004-Ohio-4190. "The trial court correctly found that appellant did not unequivocally and explicitly invoke his right to self-representation" Id. at ¶ 107.[4] See, also, State v. Cassano, 96 Ohio St.3d 94,2002-Ohio-3751; State v. Scott (Sept. 29, 1988), Franklin App. No. 88AP-346. In addition, the request must be timely. State v. Vrabel,99 Ohio St.3d 184, 2003-Ohio-3193.[5]
 {¶ 28} The record of proceedings below does not show that appellant clearly and unequivocally asserted the right of self-representation in a timely manner. Appellant broached the subject of self-representation on the date assigned for trial, October 25, 2004. At that point, appellant's two cases had been pending for approximately eight months. Invocation of the right of self-representation must be timely. Cassano; Vrabel, supra.
 {¶ 29} The trial court repeatedly asked appellant if he wished to proceed with current counsel or on his own behalf. Appellant never clearly and unequivocally asserted that he wished to proceed on his own behalf. Instead, he attempted to plea bargain with the prosecution in open court, admitted his guilt, expressed remorse, and offered mitigation of punishment. His insistence that untimely and frivolous motions to suppress be filed can only be deemed an attempt to delay the proceedings.
 {¶ 30} It was only when the trial court declined to allow appellant to file more motions to suppress evidence, would not entertain further delay, and when the prosecution declined to make a more lenient plea offer, that appellant explored self-representation in order to file his own frivolous motions to suppress. In that light, appellant never clearly and unequivocally stated that he wished to act as his own counsel. Instead, throughout the proceedings, appellant continued to attempt to negotiate a better sentence. The trial court was never presented with an explicit, clear, and unequivocal assertion that appellant wished to represent himself. Therefore, the trial court did not commit error in failing to conduct a full Faretta hearing.
 {¶ 31} Moreover, after appellant's delaying tactics proved unfruitful, the case proceeded to trial with the assistance of counsel and a jury was empanelled. Appellant acquiesced in the process and, ultimately, entered a no contest plea to the charges. By doing so, appellant abandoned the issue of self-representation. Cassano, supra, at ¶ 42, citing McKaskle v. Wiggins (1984), 465 U.S. 168, 182, 104 S.Ct. 944.
 {¶ 32} For the foregoing reasons, the first assignment of error is without merit and is overruled.
 {¶ 33} In his second assignment of error, appellant urges that he should have been allowed to file additional motions to suppress evidence. Appellant asserts that his comments to the trial court "could and should have been construed as an oral motion to suppress based upon irregularities in either the issuance of a search warrant, or its execution, or both." (Appellant's brief, at 8.) For the following reasons, we find this assignment of error lacks merit.
 {¶ 34} First and foremost, appellant's second assignment of error is based on the untenable premise that, although represented by counsel, appellant was entitled to file his own motion to suppress evidence. There is no right to hybrid representation in a criminal case. State v.Thompson (1987), 33 Ohio St.3d 1; State v. Martin, 103 Ohio St.3d 385, paragraph one of the syllabus. A defendant has the right to representation by competent counsel or the right to represent himself; not both.
 {¶ 35} The right to have the effective assistance of counsel does not mean that an attorney must file every conceivable motion, including a motion to suppress evidence. State v. Madrigal (2000), 87 Ohio St.3d 378, at 389. Here, competent counsel had reviewed appellant's stated reasons for filing additional motions to suppress and found the proposed motions did not have arguable merit.[6] Counsel is not required to file meritless motions to suppress simply because a client demands they be filed.[7] We held above that appellant did not clearly and unequivocally assert the right to self-representation. Therefore, appellant was not entitled to file his own motion to suppress.
 {¶ 36} Moreover, a motion to suppress evidence must be filed within 35 days of arraignment or seven days before trial, whichever is earlier. Appellant was arraigned on his two cases on February 4 and 17, 2004. His trial was scheduled for October 25, 2004, and continued to November 1, 2004. His last minute attempt to file his own motion to suppress evidence was untimely.
 {¶ 37} Crim.R. 12(D) permits the trial judge to extend the time for filing pretrial motions where the interests of justice require. Appellant makes no claim that the interests of justice supported the filing of additional motions on the day of trial, and there is nothing in the record to suggest that the trial court erred in applying the time constraints of Crim.R. 12(D).
 {¶ 38} Moreover, review of appellant's claimed basis for suppression of evidence demonstrates that the motions would have been meritless. Although not clearly stated either below or in appellant's brief, we assume that appellant's claim that the search warrants were backdated is an assertion that the search and seizure of evidence took place before the warrants were issued. Were that assertion correct, we would be dealing with a warrantless search and seizure of evidence. A warrantless search and seizure is presumptively invalid under the Fourth Amendment to the Constitution. However, counsel made a professional representation that he investigated this claim and found nothing to support appellant's belief. There is nothing in the record that would suggest that the judge issued the warrants after the search and seizure took place.
 {¶ 39} Appellant's second basis for suppression of evidence was the failure of the officers to personally hand him a copy of the search warrant and his claim that he did not find one at his home when he was released on bail. Again, all testimony at the hearing on the motion filed by defense counsel was that copies of the warrants were left at appellant's home.
 {¶ 40} Generally, the Exclusionary Rule will be applied to exclude evidence only where there has been a denial of a constitutional right. Evidence is not excluded because of the violation of a statute or procedural rule. Kettering v. Hollen (1980), 64 Ohio St.2d 232; State v.Droste (1998), 83 Ohio St.3d 36, syllabus.
 {¶ 41} No constitutional right is implicated by the failure to provide a copy of a valid search warrant to the owner of property searched. Evidence seized under a lawful warrant is not subject to exclusion merely because of the failure to follow the procedural requirements of Crim.R. 41(D). State v. Ulrich (1987), 41 Ohio App.3d 384. Therefore, even if this case involved a violation of Crim.R. 41(D), the evidence seized under a valid warrant was not subject to suppression.
 {¶ 42} Second, appellant appears to misread Crim.R. 41(D). The primary thrust of appellant's claims below was that he was not personally given a copy of the warrants. Crim.R. 41(D) provides an option to the officer who executes a search warrant: either to give a copy of the warrant and a receipt for property taken to the person from whom or from whose premises the property was taken, or to leave a copy and receipt at the place from which the property was taken. The rule does not express a preference between the options.
 {¶ 43} During the hearing on the motion to suppress filed by counsel, the uncontradicted testimony was that Detective Franken left a copy of the warrant and inventory at appellant's premises. Thus, the officers complied with Crim.R. 41(D). For the reasons set forth above, the second assignment of error is without merit and is overruled.
 {¶ 44} Having considered and overruled each of appellant's assignments of error, the judgments of the Franklin County Court of Common Pleas are affirmed.
Judgments affirmed.
Bryant and Petree, JJ., concur.
[1] Appellant conceded in open court that, during one of the incidents, he threatened to "blow * * * someone's * * * head off[.]" (Sentencing hearing, December 16, 2004, at Tr. 20.)
[2] Each warrant included a significant amount of information to support probable cause. No claim that the warrants were not supported by probable cause was made in the trial court and none is made on appeal. An independent review of the warrants supports a finding of probable cause by the issuing magistrate.
[3] Appellant stated the motions to suppress would be based on the fact that he was not personally handed a copy of the search warrants, that he found no copies of the warrants in his home after being released on bail and that the judge that issued the warrants must have backdated them. (October 25, 2004, Tr. 21-22.)
[4] Ahmed cited with approval both United States v. Frazier-El, supra, and Jackson v. Ylst (C.A.9, 1990), 921 F.2d 882, 888, for the proposition that a defendant who wishes to proceed to represent himself must clearly and unequivocally assert that right.
[5] In Vrabel, the court found a request made six to ten days before trial was not timely.
[6] Counsel made a professional representation that the judge who issued the search warrants had been interviewed and appellant's claim that the warrants were illegally backdated was not borne out.
[7] Appellant makes no claim that his trial counsel was ineffective.