[Cite as *State v. Perry*, 2011-Ohio-2242.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

STATE OF OHIO

    Appellee

    v.

MARQUEZ B. PERRY

    Appellant

C.A. No.     25271

APPEAL FROM JUDGMENT
ENTERED IN THE
COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
CASE No.    CR 08 01 0067(A)

DECISION AND JOURNAL ENTRY

Dated: May 11, 2011

CARR, Judge.

{¶1}    Appellant, Marquez Perry, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms.

I.

{¶2}    On January 18, 2008, Perry was indicted on two counts of murder in violation of R.C. 2903.02(A)/(B), special felonies; two counts of tampering with evidence in violation of R.C. 2921.12(A)(1), felonies of the third degree; one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of trafficking in marijuana, a felony of the fourth degree. The murder, tampering, and trafficking charges each included a firearm specification pursuant to R.C. 2941.145, while the trafficking charge also included a criminal forfeiture specification pursuant to R.C. 2941.1417. Perry pleaded not guilty to the charges at arraignment.

{¶3} Perry retained counsel. On February 20, 2008, retained counsel moved to withdraw for the reason that Perry had failed to abide by the terms and conditions of the attorney-client contract. On February 26, 2008, the trial court granted the motion to withdraw and appointed an attorney to represent Perry. On March 10, 2008, the trial court appointed a second attorney as co-counsel for Perry.

{¶4} On June 19, 2008, Perry was indicted on three additional counts: two counts of aggravated murder in violation of R.C. 2903.01(B), special felonies; and one count of aggravated robbery in violation of R.C. 2911.02(A)(1) and/or (3). All three supplemental counts carried firearm specifications pursuant to R.C. 2941.145. Perry pleaded not guilty to the charges in the supplemental indictment. The trial court scheduled the matter for trial on August 18, 2008.

{¶5} On August 1, 2008, defense counsel filed a motion to compel the State to produce certain evidence and complete testing on others. On August 14, 2008, defense counsel filed a motion to continue the trial to allow time for gun shot residue testing on certain evidence.

{¶6} Perry sent a pro se motion for waiver of counsel to the trial court. The trial court addressed the motion at a hearing on August 18, 2008, and the motion was filed on August 19, 2008. Although Perry's pro se motion is not docketed on the transcript of docket and journal entries, it bears a time-stamp from the Summit County Clerk of Courts and a copy of the motion is contained in the record on appeal. On August 25, 2008, the trial court denied Perry's pro se motion.

{¶7} On October 3, 2008, the State amended the charge of having weapons while under disability to reflect a charge pursuant to R.C. 2923.13(A)(2)/(3), a felony of the third degree.

{¶8} The matter proceeded to trial. The jury found Perry guilty of two counts of aggravated murder along with the companion firearm specifications, two counts of murder along

with the companion firearm specifications, one count of aggravated robbery along with the companion firearm specification, and two counts of tampering with evidence. The State dismissed the remaining counts of having weapons while under disability, trafficking in marijuana, and all other firearm and criminal forfeiture specifications. At sentencing, the trial court merged the two counts of murder into the two counts of aggravated murder and sentenced Perry to an aggregate term of sixty-six years to life imprisonment on the remaining charges.

{¶9} Perry filed a timely appeal. By journal entry, this Court vacated Perry's sentence and remanded the matter to the trial court for resentencing according to law. *State v. Perry* (Sep. 3, 2009), 9th Dist. No. 24527. The trial court resentenced Perry on January 26, 2010. Perry has filed a timely appeal in which he raises three assignments of error. This Court rearranges some assignments of error to facilitate review.

II.

**ASSIGNMENT OF ERROR I**

"THE TRIAL COURT COMMITTED PER SE REVERSIBLE ERROR WHEN IT DENIED APPELLANT THE CONSTITUTIONAL RIGHT TO REPRESENT HIMSELF AT TRIAL."

{¶10} Perry argues that the trial court erred by denying his motion to waive his right to counsel and represent himself pro se. This Court disagrees.

{¶11} More than thirty-five years ago, the United States Supreme Court held that, implicit in the structure of the Sixth Amendment, a criminal defendant has a constitutional right to self-representation. *Faretta v. California* (1975), 422 U.S. 806, 819. The following year, the Ohio Supreme Court acknowledged that a criminal defendant may elect to defend himself without counsel after knowingly, voluntarily, and intelligently waiving his right to counsel. *State v. Gibson* (1976), 45 Ohio St.2d 366, 377-78. Significantly, however, the right to self-

representation "occupies no hallowed status similar to the right to counsel enshrined in the Sixth Amendment. While the right to counsel attaches unless affirmatively waived, the right to self-representation does not attach until asserted." *Sandoval v. Calderon* (C.A.9, 2000), 241 F.3d 765, 774. The Ninth Circuit reasoned: "Because invocation of the right to self-representation entails a concomitant forfeiture of the important benefits offered by the right to counsel, our cases have come to recognize certain limitations on a defendant's right to self-representation. A defendant may not invoke the *Faretta* right if the *Faretta* demand is untimely, equivocal, made for the purpose of delay, or is not knowingly and intelligently made." *Sandoval*, 241 F.3d at 774. Furthermore, because "courts [must] indulge in every reasonable presumption against waiver" of the right to counsel, a strict standard must be applied when determining the adequacy of a criminal defendant's invocation of the right to self-representation. *Brewer v. Williams* (1977), 430 U.S. 387, 404.

{¶12} When a criminal defendant has properly invoked his right to self-representation, a trial court's denial of that right constitutes per se reversible error. *State v. Vrabel*, 99 Ohio St.3d 184, 2003-Ohio-3193, at ¶49, citing *State v. Reed* (1996), 74 Ohio St.3d 534, 535, citing *McKaskle v. Wiggins* (1984), 465 U.S. 168, 177. Perry argues that a criminal defendant properly invokes his right to self-representation "simply" where he has "timely" invoked the right. The Ohio Supreme Court has clearly and repeatedly held that a criminal defendant waives the right to self-representation if he fails to assert it in both a timely and unequivocal manner. *State v. Cassano*, 96 Ohio St.3d 94, 2002-Ohio-3751, at ¶38; *State v. Dean*, 127 Ohio St.3d 140, 2010-Ohio-5070, at ¶67. This Court concludes that Perry failed to unequivocally invoke his right to self-representation.

{¶13} In his pro se motion for waiver of counsel, Perry complains that one of the attorneys appointed to represent him exhibits "ignorance" regarding the case, while he (Perry) is "fully capable of preparing the best defense possible." Perry wrote that he is "very afraid to go into trial with [one of the appointed attorneys]" because he believes that that attorney "knows how to sell a client out[.]" The trial court held a hearing on Perry's motion. The judge informed Perry of some of the responsibilities he would assume if he were to represent himself and difficulties he would face in meeting those responsibilities given his young age (19) and lack of legal training. The trial court informed Perry that it believed that both of his attorneys are effective attorneys. The court noted Perry's specific concerns regarding one of the attorneys and advised Perry that he must provide his attorneys with the information he believes will aid in his defense. The trial court explained that he will not be permitted to "spring" a "secret defense" on the State and jury during trial. The judge explained that she was not going to allow Perry to represent himself because of the complexities he would face while trying to comply with the procedural rules, some of which he earlier indicated he did not understand. The judge asked whether Perry understood what she was telling him and he responded, "Yes, ma'am." When the court asked whether he had any questions, Perry responded, "No." The trial court then denied Perry's motion to represent himself and advised him to talk to his attorneys about the evidence he believed must be presented to the jury.

{¶14} The better practice may be for the trial court in all cases to make sufficient inquiry to ensure that the criminal defendant understands the "seriousness of the trial and the possible results it could have for his liberty and life" when considering a motion to proceed pro se. See *Gibson*, 45 Ohio St.2d at 377. In the absence of sufficient inquiry, the trial court cannot properly determine that the defendant has knowingly, voluntarily, and intelligently waived his right to

counsel. Id. at paragraph two of the syllabus. However, unlike the right to counsel, the right to self-representation is waived in the absence of a timely, clear, and unequivocal invocation of the right. It is, therefore, axiomatic that the denial of a motion to proceed pro se does not implicate the same depth of inquiry where the right has not been properly invoked.

{¶15} Perry's invocation of his right to self-representation was not clear and unequivocal. He declined to pursue the matter despite the trial court's willingness to entertain his questions. His failure to attempt to dispel the concerns raised by the trial court amounted to his acquiescence and tacit abandonment of his motion. He never raised the issue again during the next seven weeks prior to the commencement of trial or during trial.

{¶16} Moreover, the basis for his motion to waive counsel centered on his concerns about only one of his appointed attorneys. Perry never voiced any concern for his other attorney's abilities or integrity either in writing or orally at the hearing. The Ohio Supreme Court has held: "In Ohio, a criminal defendant has the right to representation by counsel or to proceed pro se with the assistance of standby counsel. However, these two rights are independent of each other and may not be asserted simultaneously." *State v. Martin*, 103 Ohio St.3d 385, 2004-Ohio-5471, paragraph one of the syllabus. Perry did not seek the removal of his second attorney. He failed to address any deficiencies of his other attorney in support of his motion to waive counsel. In effect, Perry sought the right to self-representation while maintaining the assistance of his remaining attorney. On the authority of *Martin*, he was not entitled to such hybrid representation. "[R]equiring a defendant to clearly and unequivocally waive counsel and elect self-representation, 'prevents a defendant from taking advantage of and manipulating the mutual exclusivity of the rights to counsel and self-representation.'" *State v. Haines*, 10th Dist. No. 05AP-55, 2005-Ohio-5707, at ¶26, quoting *United States v. Frazier-El*

(C.A.4, 2000), 204 F.3d 553, 559. Because Perry did not clearly and unequivocally assert his right to self-representation, he did not properly invoke the right. Accordingly, the trial court did not err by denying his pro se motion to waive counsel. Perry's first assignment of error is overruled.

### ASSIGNMENT OF ERROR III

"THE TRIAL COURT COMMITTED PLAIN ERROR TO THE PREJUDICE OF APPELLANT WHEN IT FAILED TO INSTRUCT THE JURY ON SELF DEFENSE WHERE THE TESTIMONY AT TRIAL WARRANTED SUCH AN INSTRUCTION, AND DEFENSE COUNSEL FAILED TO REQUEST SUCH AN INSTRUCTION."

{¶17} Perry argues that the trial court committed plain error when it failed to instruct the jury on self-defense. This Court disagrees.

{¶18} Perry did not present self-defense as the theory of his defense in his opening statement. He did not argue self-defense in his closing argument. The State noted in its closing argument that Perry was not raising self-defense.

{¶19} The trial court did not instruct the jury on self-defense. It did instruct the jury that to act purposely, as required to establish aggravated murder and murder, means to act "intentionally and not accidentally." The trial court instructed the jury on the "transfer of purpose" doctrine in relation to one of the charges of aggravated murder, explaining that one is responsible for the natural and foreseeable consequences of his actions. In addition, the trial court instructed the jury as to complicity, addressing a "common purpose to commit a crime."

{¶20} Perry failed to object to the jury instructions. Crim.R. 52(B) permits a court to notice plain errors or defects which affect substantial rights although they have not been brought to the attention of the court. This Court reviews an issue for plain error in cases where the appellant has otherwise forfeited the issue on appeal by failing to raise it below at a time when

the trial court had the opportunity to correct the alleged error. *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶6. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Perry has established that the outcome of the trial clearly would have been different but for the alleged error. *State v. Kobelka* (Nov. 7, 2001), 9th Dist. No. 01CA007808, citing *State v. Waddell* (1996), 75 Ohio St.3d 163, 166.

{¶21} A criminal defendant has the burden of proving the affirmative defense of self-defense by a preponderance of the evidence. *State v. Martin* (1986), 21 Ohio St.3d 91, syllabus; R.C. 2901.05(A). An affirmative defense constitutes a "justification for admitted conduct[,] *** not a mere denial or contradiction of evidence which the prosecution has offered of an essential element of the crime charged[.]" *State v. Poole* (1973), 33 Ohio St.2d 18, 19.

{¶22} A trial court need not instruct the jury on self-defense unless the defendant has successfully raised the affirmative defense by introducing "sufficient evidence, which, if believed, would raise a question in the minds of reasonable men concerning the existence of such issue." *State v. Melchior* (1978), 56 Ohio St.2d 15, paragraph one of the syllabus. The Ohio Supreme Court has held:

> "To establish self-defense, the following elements must be shown: (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger." *State v. Robbins* (1979), 58 Ohio St.2d 74, paragraph two of the syllabus.

The defendant's failure to prove any of these elements by a preponderance of the evidence negates his assertion of self-defense. *State v. Williford* (1990), 49 Ohio St.3d 247, 249.

**{¶23}** Significantly, "it has long been established that accident is not an affirmative defense in this state." *Poole*, 33 Ohio St.2d at 20, citing *Jones v. State* (1894), 51 Ohio St. 331. The concepts of self-defense and accident are distinct and not interchangeable. "Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force or shooting is exactly the contrary, wholly unintentional and unwillful." *State v. Champion* (1924), 109 Ohio St. 281, 286-87. This Court has elaborated: "While accident 'involves the denial of a culpable mental state and is tantamount to the defendant not committing an unlawful act,' one claiming self-defense 'concedes [that] he had the purpose to commit the act, but asserts that he was justified in his actions.'" *State v. Howe* (July 25, 2001), 9th Dist. No. 00CA007732, quoting *State v. Barnd* (1993), 85 Ohio App.3d 254, 260.

**{¶24}** In this case, Tammy Dickey and Scott Smith were killed after being shot multiple times during an arranged drug deal in Ms. Dickey's car. Ms. Dickey, Perry's girlfriend, arranged the drug deal on his behalf. As Ms. Dickey sat in the driver's seat, Mr. Smith entered the vehicle's rear passenger seat. Perry sat in the front passenger seat, while his friend, identified only as "Brian," sat behind Ms. Dickey. Mr. Smith brought a large quantity of marijuana for sale, while Perry was to have brought $1200. During the transaction, guns were drawn and shots were fired. Ms. Dickey was shot twice, once through her jugular vein, causing her immediate death. Mr. Smith was shot five times. He died shortly thereafter, after an unsuccessful surgery to repair the damage.

**{¶25}** Several witnesses in the area testified that they heard gunshots and observed Perry shortly thereafter outside the vehicle "fidgeting" with a hand gun. Perry fled the scene and drove to a nearby Circle K store parking lot where he called 911. The police followed two sets of footprints in the fresh snow to a fence. They recovered two hand guns in the snow on the other

side of the fence. Bullets and casings recovered at the scene and from and around the two victims were determined to have been fired from one or the other of the two guns found near the Circle K. Perry's DNA was found on the triggers of both recovered guns.

{¶26} Perry testified in his own defense at trial. He admitted that he was involved in the drug transaction in Ms. Dickey's car. He testified that Mr. Smith showed the marijuana he brought for sale but then reached to his side, pulled out a gun, and pointed it at Perry. Perry testified that he and Mr. Smith began "wrestling" and that the "gun started going off." He testified that "Brian" pulled out a gun that he and Perry "shared" and that "Brian" shot Mr. Smith. Perry testified that, after "Brian" started shooting, Mr. Smith exclaimed, "Ow, I'm shot." He testified that he heard three or four shots from "Brian's" gun. Perry further denied shooting Ms. Dickey.

{¶27} Perry claimed not to have shot either victim. The State, however, presented circumstantial evidence that he did as well as evidence of a common criminal purpose between Perry and "Brian." While testifying about his struggle with Mr. Smith over a gun, Perry was careful to assert that the "gun started going off" rather than asserting that a specific person began firing the gun. Rather than taking responsibility for firing the gun, Perry's testimony indicated that the discharge of the gun was accidental. Such evidence does not merit a self-defense instruction and, in fact, precludes it. Moreover, Perry never testified or presented any evidence that he was in fear of imminent death or great bodily harm to himself. On the contrary, he testified that he wrestled with Mr. Smith in an effort to "keep the gun away from [Smith]." Such testimony tends to prove that Perry was attempting to keep Mr. Smith safe from any shots accidentally fired from the gun. Because Perry presented no evidence that he intentionally fired the gun to protect himself from imminent death or great bodily harm, and he instead presented

evidence that the firing of the gun was accidental, there was no error in the trial court's failure to instruct on self-defense. Perry's third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"APPELLANT WAS DENIED HIS CONSTITUTIONAL SIXTH AMENDMENT RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL."

{¶28} Perry argues that counsel was ineffective for failing to request an instruction on self-defense. This Court disagrees.

{¶29} To establish the existence of the ineffective assistance of counsel, Perry must satisfy a two-prong test:

> "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland v. Washington* (1984), 466 U.S. 668, 687.

Perry bears the burden of proving that counsel's assistance was ineffective. *State v. Hoehn*, 9th Dist. No. 03CA0076-M, 2004-Ohio-1419, at ¶44, citing *State v. Colon*, 9th Dist. No. 20949, 2002-Ohio-3985, at ¶49; *State v. Smith* (1985), 17 Ohio St.3d 98, 100.

{¶30} The Ohio Supreme Court has recognized that a court need not analyze both prongs of the *Strickland* test, where the issue may be disposed upon consideration of one of the factors. *State v. Bradley* (1989), 42 Ohio St.3d 136, 143. Specifically,

> "'Although we have discussed the performance component of an ineffectiveness claim prior to the prejudice component, there is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing in one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we

expect will often be so, that course should be followed. Courts should strive to ensure that ineffectiveness claims not become so burdensome to defense counsel that the entire criminal justice system suffers as a result.'" Id., quoting *Strickland*, 466 U.S. at 697.

**{¶31}** This Court has already determined that a self-defense instruction was not warranted based on the evidence adduced at trial. Perry testified in his own defense and had the opportunity to testify that he acted in self-defense. Instead, he did not testify that he shot Mr. Smith out of fear of imminent death or great bodily harm. In fact, he denied that he shot Mr. Smith at all, testifying instead that "Brian" shot Mr. Smith. Moreover, Perry implied that the gun he handled accidentally "started going off." Accordingly, Perry's own testimony gave rise to the reasonable inference that Ms. Dickey's death was accidental. Because a self-defense instruction was not warranted, in large part due to Perry's own testimony, defense counsel's performance was not deficient when he failed to request a self-defense instruction. Perry's second assignment of error is overruled.

## III.

**{¶32}** Perry's assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

DICKINSON, P. J.
BELFANCE, J.
CONCUR

APPEARANCES:

NICHOLAS SWYRYDENKO, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and HEAVEN R. DIMARTINO, Assistant Prosecuting Attorney, for Appellee.