[Cite as *State v. Hughes*, 2014-Ohio-4039.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF SUMMIT | ) | |

| STATE OF OHIO | C.A. No. 27061 |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CIERRA R. HUGHES | COURT OF COMMON PLEAS COUNTY OF SUMMIT, OHIO |
| Appellant | CASE No. CR 13 01 0185 |

DECISION AND JOURNAL ENTRY

Dated: September 17, 2014

MOORE, Judge.

{¶1} Defendant-Appellant, Cierra R. Hughes, appeals from the August 26, 2013 judgment entry of the Summit County Court of Common Pleas. We affirm.

I.

{¶2} Ms. Hughes met Johnny Christopher Campbell on an online dating website known as "Air G." After communicating via internet and telephone for a couple of months, Mr. Campbell invited Ms. Hughes to his apartment in Akron, Ohio. In the early morning hours of December 12, 2012, Ms. Hughes arrived at Mr. Campbell's apartment. After talking for a few minutes, Ms. Hughes went outside to "smoke a blunt." According to Mr. Campbell, Ms. Hughes was gone for about five minutes when he got up and looked out the window. At that time, he saw a truck drive by very slowly, and, because this alarmed him, Mr. Campbell locked the apartment door. Then, going back to the window, he saw Ms. Hughes walking toward the apartment and unlocked the door. When Ms. Hughes re-entered the apartment, she was followed

by three men, one of whom had a gun. Mr. Campbell was struck in the face with the gun and robbed. Ms. Hughes left the apartment at the same time as the men, and Mr. Campbell had no further contact with her.

{¶3} Ms. Hughes was indicted on one count of aggravated robbery, in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145, one count of conspiracy to commit aggravated robbery, in violation of R.C. 2911.01(A)(1)/2923.01, and one count of felonious assault, in violation of R.C. 2903.11(A)(2). Ms. Hughes pleaded not guilty to all charges and the matter proceeded to jury trial. Upon the State's motion, the trial court dismissed the charge for conspiracy to commit aggravated robbery.

{¶4} The jury found Ms. Hughes guilty of aggravated robbery, with a firearm specification, and felonious assault. The trial court sentenced her to four years' imprisonment for aggravated robbery, to run consecutively with a mandatory term of three years' imprisonment for the firearm specification. The court imposed a sentence of seven years' imprisonment for felonious assault, to run concurrently with the sentence in the other count.

{¶5} Ms. Hughes appealed, raising three assignments of error for our consideration.

II.

## ASSIGNMENT OF ERROR I

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT VIOLATED THE SIXTH AMENDMENT'S CONFRONTATION CLAUSE WHEN IT ADMITTED THE 911 CALL INTO EVIDENCE.

{¶6} Although Ms. Hughes phrased her first assignment of error as a constitutional challenge based upon the Sixth Amendment's Confrontation Clause, she does not set forth any

argument regarding this issue.[1]   Instead, she argues that the trial court erred in playing the recording of the 911 call for the jury because it is hearsay.  We limit our discussion accordingly.

{¶7}   "The decision to admit or exclude evidence lies in the sound discretion of the trial court."  *State v. Wright*, 9th Dist. Lorain No. 05CA008675, 2006-Ohio-926, ¶ 5, citing *State v. Sage*, 31 Ohio St.3d 173, 180 (1987). "This Court, therefore, reviews the trial court's decision regarding evidentiary matters under an abuse of discretion standard of review." *Wright* at ¶ 5. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

{¶8}   Upon careful review of the record, we note that Ms. Hughes did not object at the time the 911 call was played for the jury, and it is unclear whether she objected when the State moved to admit the recording into evidence.  "The law is well[-]settled that failure to contemporaneously object during the identification of a document and testimony regarding it forfeits appellate review." *State v. Cross*, 9th Dist. Summit No. 25487, 2011-Ohio-3250, ¶ 49, citing *State v. Gray,* 9th Dist. Wayne No. 08CA0057, 2009-Ohio-3165, ¶ 7.  Accordingly, "'an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[ ]' at a time when the trial court might have corrected the error." (Alteration sic.)  *State v. Caldwell,* 9th Dist. Summit No. 26303, 2013-Ohio-1417, ¶ 8, quoting *State v. Dent*, 9th Dist. Summit No. 20907, 2002-Ohio-4522, ¶ 6.  Ms. Hughes, therefore, has forfeited her right to challenge the issue on appeal. *See Caldwell* at ¶ 8.

{¶9}   "'By forfeiting the issue for appeal, [Ms. Hughes] has confined our analysis to an assertion of plain error.'" *Cross* at ¶ 51, quoting *Gray* at ¶ 7, citing *State v. Payne,* 114 Ohio

---

[1]   Had Ms. Hughes presented an argument regarding the Sixth Amendment's Confrontation Clause, it would not have been well-taken because Mr. Campbell, the 911 caller, both testified at trial and was cross-examined.

St.3d 502, 2007-Ohio-4642, ¶ 23; Crim.R. 52(B). "'While a defendant who forfeits such an argument still may argue plain error on appeal, this court will not sua sponte undertake a plain [] error analysis if a defendant fails to do so.'" *Cross* at ¶ 51, quoting *Akron v. Lewis,* 179 Ohio App.3d 649, 2008-Ohio-6256, ¶ 22 (9th Dist.); App.R. 16(A)(7); App.R. 12(A)(2); Loc.R. 7(B)(7).

{¶10} Here, because Ms. Hughes failed to argue plain error on appeal, we will not undertake such an analysis. Accordingly, Ms. Hughes' first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT COMMITTED A REVERSIBLE ERROR WHEN IT ADMITTED [MS. HUGHES'] JAIL HOUSE PHONE CALL INTO EVIDENCE AS THE CALL WAS PURE HEARSAY AND OFFERED TO PROVE [MS. HUGHES'] ALLEGED INVOLVEMENT IN THE ROBBERY OF [MR. CAMPBELL'S] APARTMENT.

{¶11} In her second assignment of error, Ms. Hughes argues that the trial court erred in admitting into evidence a recorded "jail house" telephone conversation because it is hearsay. Specifically, Ms. Hughes argues that Evid.R. 801(D)(2)(b) does not apply because the conversation between herself and a third party took place out of court and Ms. Hughes did not take the stand to testify.

{¶12} As stated above, this Court reviews a trial court's decision to admit or exclude evidence for an abuse of discretion. *See Wright*, 2006-Ohio-926, at ¶ 5. An abuse of discretion means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219.

{¶13} Here, during trial, the State moved to play a recording of a "jail house" conversation between Ms. Hughes and a third party. Ms. Hughes stipulated to making a call from the jail to a specific telephone number on January 10, 2013, and also to the authenticity of

the recording. However, Ms. Hughes objected to playing the recording for the jury on the grounds that the comments made by the third party constituted hearsay. The trial court overruled Ms. Hughes' objection and allowed the recording to be played, concluding that it was not hearsay because the third party's statements were only being offered to provide context for Ms. Hughes' statements. This recording was not transcribed into the record, but the CD was admitted into evidence as State's Exhibit 9. We have listened to the CD, and note that the dialogue between Ms. Hughes and the third party is quite difficult to understand because they are speaking very quickly, and, at times, over one another. However, based upon Ms. Hughes' argument in her appellate brief, we were able to discern the following exchange that she appears to challenge:

   * * *

[Third Party]: You better tell on his ass. * * * You better listen to me.* * *

[Ms. Hughes]: Have you talked to him?

* * *

{¶14} Pursuant to Evid.R. 801(C), "'[h]earsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." In the present matter, the third parties' statements, "[y]ou better tell on his ass. * * * [y]ou better listen to me," and Ms. Hughes' response, "[h]ave you talked to him," are not hearsay because they are not assertions. *See State v. Auerswald*, 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 31, citing *State v. Leonard,* 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 97. "'An assertion for hearsay purposes 'means to say that something is so, e.g., that an event happened or that a condition existed.'" *Auerswald* at ¶ 31, quoting *State v. West,* 10th Dist. Franklin No. 06AP-114, 2006-Ohio-5095, ¶ 9, quoting *Leonard* at ¶ 97, quoting *State v. Carter,* 72 Ohio St.3d 545, 549 (1995). The statements made by the third party that are

challenged by Ms. Hughes are not assertions because they cannot be proved true or false, and cannot be offered to prove the truth of the matter asserted. *See West* at ¶ 9. *See also State v. Young*, 8th Dist. Cuyahoga No. 78058, 2001 WL 370460, *5 (May 16, 2001) (concluding that questions, warnings, and directives were not hearsay because they were not assertive in nature and were incapable of being proved true or false).

**{¶15}** Based upon the foregoing, we conclude that, "[y]ou better tell on his ass * * * [y]ou better listen to me," is a directive, and "[h]ave you talked to him," is a question, neither of which is assertive in nature or capable of being proved true or false. Further, Ms. Hughes has not argued that the trial court committed plain error in concluding that the "jailhouse call" was relevant for purposes of tending to make more probable that Ms. Hughes had knowledge regarding the identity of one, or all, of the men who assaulted and robbed Mr. Campbell, as she did not respond that she did not know the person, or did not know what the third party was talking about, or words to that effect. *See* Evid.R. 402.

**{¶16}** Accordingly, Ms. Hughes' second assignment of error is overruled.

### ASSIGNMENT OF ERROR III

THE EVIDENCE WAS INSUFFICIENT TO SUPPORT CONVICTING [MS. HUGHES] AS THERE WAS NOTHING INDICATING [MS. HUGHES] PARTICIPATED IN ANYTHING OTHER THAN BEING PRESENT IN THE APARTMENT WHEN THE ALLEGED CRIMES OCCURRED.

**{¶17}** In her third assignment of error, Ms. Hughes contends that the evidence was insufficient to support her convictions for aggravated robbery, with a firearm specification, and felonious assault. Ms. Hughes first argues that there was insufficient evidence to support her conviction as to the R.C. 2941.145 firearm specification, which added a mandatory three year term of imprisonment onto her sentence. Ms. Hughes also argues that there was insufficient evidence that she aided and abetted in the commission of the aggravated robbery and felonious

assault against Mr. Campbell. However, Ms. Hughes does not dispute the fact that an aggravated robbery or felonious assault occurred. We limit our discussion accordingly.

{¶18} In determining whether a conviction is supported by sufficient evidence:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. *See also State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. Further, circumstantial evidence has the same probative value as direct evidence. *Jenks* at paragraph one of the syllabus.

{¶19} As indicated above, a jury found Ms. Hughes guilty of aggravated robbery, in violation of R.C. 2911.01(A)(1), with a firearm specification pursuant to R.C. 2941.145, and felonious assault, in violation of R.C. 2903.11(A)(2).

Operability of firearm

{¶20} In the present matter, Ms. Hughes argues that the State failed to prove that, pursuant to R.C. 2941.145, the firearm was operable or could have readily been rendered operable at the time of the offense. R.C. 2941.145(A) provides, in relevant part, that:

> Imposition of a three-year mandatory prison term upon an offender under division (B)(1)(a) of section 2929.14 of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense.

Further, "'[a]n unarmed accomplice who actively participates in a robbery where the victims are held by another accomplice at gunpoint may be subject to a firearm specification and the mandatory commitment time under that specification.'" *State v. Hayes*, 9th Dist. Summit No. 22168, 2005-Ohio-1464, ¶ 18, quoting *Matter of Foster*, 9th Dist. Lorain No. 97CA006766, 1998 WL 240113, *5, citing *State v. Chapman*, 21 Ohio St.3d 41 (1986), syllabus.

{¶21} "To be 'operable' a firearm must be 'capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.'" *Hayes* at ¶ 19, quoting R.C. 2923.11(B)(1). "In determining operability, the trier of fact 'may rely upon circumstantial evidence, including * * * the representations and actions of the individual exercising control over the firearm.'" *Hayes* at ¶ 19, quoting R.C. 2923.11(B)(2). "Accordingly, the trier of fact must evaluate the evidence of a firearm's operability by examining the totality of the circumstances." *Hayes* at ¶ 19, citing *State v. Murphy*, 49 Ohio St.3d 206, 208 (1990).

{¶22} At trial, the State presented evidence that one of the men involved in the robbery brandished a gun and told Mr. Campbell to "get the F on the floor." That same man approached Mr. Campbell and hit him in the face with the gun, causing him to fall to the ground. Mr. Campbell testified that after getting up from the floor, he walked over to his desk and gave his assailants $80. Mr. Campbell further testified that: "[t]he guy with the gun started approaching me like he, basically, *wanted to shoot me*. There was another guy that was there with them, jumped in front of him and he was like, 'No, no. Leave him alone. He gave us the money, he gave us the money. Leave him alone.'" (Emphasis added.) On redirect examination, Mr. Campbell also testified that when the man with the gun was coming closer to him, he thought the man was going to shoot him.

{¶23} In viewing the evidence in a light most favorable to the State, the jury could have found beyond a reasonable doubt that the firearm used in the assault and robbery was operable. Mr. Campbell testified that he was struck in the face with a gun, that the man with the gun approached him as if he were going to shoot the gun, and that another one of the assailants stood between them in order to prevent Mr. Campbell from being shot. *See Hayes* at ¶ 20.

{¶24} Therefore, we conclude that there was sufficient evidence in the record to uphold Ms. Hughes' conviction for the R.C. 2941.145 firearm specification.

Complicity

{¶25} Ms. Hughes also argues that there was insufficient evidence that, pursuant to R.C. 2923.03(A)(2), she was complicit in committing the aggravated robbery and felonious assault against Mr. Campbell.

{¶26} It is well-settled that "[a] person need not be the principal offender to be convicted of a crime." *State v. Davis*, 9th Dist. Summit No. 26660, 2013-Ohio-5226, ¶ 11. "R.C. 2923.03(A)(2) provides that '[n]o person, acting with the kind of culpability required for the commission of an offense, shall * * * [a]id or abet another in committing the offense.'" *Id.* quoting R.C. 2923.03(A)(2). "'To support a conviction for complicity by aiding and abetting pursuant to R.C. 2923.03(A)(2), the evidence must show that the defendant supported, assisted, encouraged, cooperated with, advised, or incited the principal in the commission of the crime, and that the defendant shared the criminal intent of the principal.'" *Davis* at ¶ 11, quoting *State v. Johnson,* 93 Ohio St.3d 240 (2001), syllabus. "'The criminal intent of the aider and abettor 'can be inferred from the presence, companionship, and conduct of the defendant *before and after the offense is committed*.'" (Emphasis added.) *Davis* at ¶ 11, quoting *State v. Stephens,* 9th Dist. Summit No. 26516, 2013-Ohio-2223, ¶ 18, quoting *State v. Smith,* 9th Dist. Summit No.

25650, 2012-Ohio-794, ¶ 7. "A person who violates R.C. 2923.03(A)(2) is guilty of complicity and "'shall be prosecuted and punished as if he were a principal offender. A charge of complicity may be stated in terms of this section, *or in terms of the principal offense*.'" (Emphasis added.) *Davis* at ¶ 11, quoting R.C. 2923.03(F).

{¶27} At trial, the State presented evidence that:

(1) Mr. Campbell met Ms. Hughes through an online dating website and, after a couple of months, he invited her to his apartment in Akron;

(2) Ms. Hughes drove from Youngstown to Akron, and arrived at Mr. Campbell's apartment in the early morning hours of December 12, 2012;

(3) after briefly chatting with Mr. Campbell, Ms. Hughes told him that she wanted to go outside and smoke a blunt;

(4) Ms. Hughes went outside, and when she returned, three men followed her into Mr. Campbell's apartment;

(5) Mr. Campbell testified that upon entering his apartment, Ms. Hughes turned around and smiled at the men;

(6) the men locked Mr. Campbell's apartment door, hit him in the face with a gun, and demanded money;

(7) while this was happening, Ms. Hughes stood by and watched;

(8) Mr. Campbell testified that Ms. Hughes did not seem surprised that the three men followed her into his apartment, nor did she seem upset, concerned, or fearful during the assault and robbery;

(9) Mr. Campbell did not see anyone threaten or point a gun at Ms. Hughes;

(10) Ms. Hughes left Mr. Campbell's apartment at the same time as the three men, and Mr. Campbell never heard from her again;

(11) Sergeant Scott Lietke testified that, when Ms. Hughes was brought in for questioning, she told him that the men who robbed Mr. Campbell also took $100 and her cell phone, and that her cell phone had a pass code lock on it;

(12) the record indicates that, even though Ms. Hughes said that her cell phone was stolen and had a lock on it, several calls were made from that phone to one of Ms. Hughes' relatives a few hours after the robbery and prior to when Ms. Hughes told Sergeant Lietke that she transferred her number to another phone;

(13) Ms. Hughes never called the police to report the robbery;

(14) Ms. Hughes admitted to Sergeant Lietke that Mr. Campbell was robbed and hit with a gun; and

(15) Ms. Hughes made a telephone call from the jail to an unidentified third party and, during the call, by her silence in failing to respond to a directive, indicated that she had knowledge of the identity of at least one of the men who robbed and assaulted Mr. Campbell.

{¶28} In viewing the evidence in a light most favorable to the State, we conclude that a jury could have found beyond a reasonable doubt that Ms. Hughes "supported, assisted, * * * [or] cooperated with" Mr. Campbell's assailants in their commission of felonious assault and aggravated robbery. *See Davis* at ¶ 16, quoting *Johnson,* 93 Ohio St.3d 240 at syllabus. Ms. Hughes led the men into Mr. Campbell's apartment, smiled at them, stood by and watched as they assaulted and robbed Mr. Campbell, showed no fear or concern for him during the attack, left Mr. Campbell's apartment at the same time as the assailants, never called the police, never called to check on Mr. Campbell, and implied through a conversation with a third party that she knew at least the identity of one of his assailants.

{¶29} Therefore, we conclude that, pursuant to R.C. 2923.03(A)(2), there is sufficient evidence in the record to uphold Ms. Hughes' convictions for aggravated robbery, with a firearm specification, and felonious assault.

{¶30} Accordingly, Ms. Hughes' third assignment of error is overruled.

III.

{¶31} In overruling all of Ms. Hughes' assignments of error, the judgment of the Summit County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

BELFANCE, P. J.
WHITMORE, J.
CONCUR.


APPEARANCES:

JASON D. WALLACE, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.