[Cite as *State v. Eggeman*, 2015-Ohio-5177.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 14CA0085-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| DANIEL J. EGGEMAN | WADSWORTH MUNICIPAL COURT COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 14CRB00097 (A-C) |

DECISION AND JOURNAL ENTRY

Dated: December 14, 2015

MOORE, Judge.

{¶1} Defendant-Appellant, Daniel J. Eggeman, appeals pro se from the judgment of the Wadsworth Municipal Court. For the reasons set forth below, we affirm.

I.

{¶2} On December 6, 2013, Mr. Eggeman contacted the police to report that he was receiving unwanted emails and phone calls from his ex-wife, Becky Workman. Officer Keith Studer of the Wadsworth Police Department responded to Mr. Eggeman's residence on Chestnut Street. Pamela Wingate, Mr. Eggeman's fiancée, indicated that she was receiving threatening phone calls from Ms. Workman and Mr. Eggeman showed Officer Studer emails sent from the email address becky.workmam@gmail.com to his email address. Notably, the email address contained a misspelling of Ms. Workman's last name. The emails expressed a desire for reconciliation and were critical of Ms. Wingate. Officer Studer had Mr. Eggeman, in Officer Studer's presence, send an email to becky.workmam@gmail.com, requesting that the contact

cease. Several days later, Mr. Eggeman again contacted Officer Studer to report that Mr. Eggeman had received more emails and wanted Officer Studer to pursue charges against Ms. Workman.

{¶3} Officer Studer then went to Ms. Workman's house to interview her. Ms. Workman denied any involvement and claimed that she had not had contact with Mr. Eggeman since the summer. She indicated that the last time she saw Mr. Eggeman, he asked her to complete a statement and have it notarized. When she refused, Mr. Eggeman became very upset and told her she would be hearing from his lawyer.

{¶4} A few days later, Mr. Eggeman forwarded Officer Studer another email sent from the becky.workmam@gmail.com. That email included references that the sender and Mr. Eggeman had previously discussed ways to kill Ms. Wingate so the two could be together. Given the content, subpoenas were issued to Google for the Internet Protocol ("IP") addresses of the Chestnut street address and the becky.workmam Gmail account for the period from December 6, 2013 through December 23, 2013. Records revealed that the Gmail account was created July 25, 2013, and was accessed from two IP addresses during the December time frame. Police then sent a subpoena to Frontier Communications, which is the cable internet provider associated with the IP addresses. The sum of the records indicated that the account was accessed, during the relevant time period, from Chestnut Street; specifically the address where Mr. Eggeman and Ms. Wingate lived. Laptop computers were seized from the Chestnut Street address and were analyzed by Officer Joshua Cooper, who specializes in computer forensics.

{¶5} Ultimately, complaints were filed against Mr. Eggeman on February 3, 2014, for two counts of falsification and one count of obstructing official business. While Mr. Eggeman initially was subject to a $5,000 cash or surety bond, it was subsequently modified and Mr.

Eggeman was released on bond. The Medina County Public Defender's Office initially represented Mr. Eggeman, but later withdrew after Mr. Eggeman retained private counsel. Shortly thereafter, that counsel withdrew and Mr. Eggeman retained another attorney. The matter proceeded to a jury trial, during which Mr. Eggeman was represented by the third attorney. The jury found Mr. Eggeman guilty of the charges. Mr. Eggeman represented himself at sentencing and his sentence was stayed pending appeal.

## ASSIGNMENT OF ERROR

{¶6} Mr. Eggeman's single assignment of error consists of a score of paragraphs of rambling and disjointed complaints detailing his disagreement, in no particular order, with the trial court's decision, his encounters with the police, the sheriff, and the local prosecutor, the ineffectiveness of his attorney, the bond on which he was held, his improper arraignment, prosecutorial misconduct, presentation of false evidence, and the denial of self-representation. The assignment of error violates both the letter and the spirit of App.R. 16, and severely limits our ability to respond to the arguments made in the brief. With respect to pro se litigants, this Court has held that:

> [P]ro se litigants should be granted reasonable leeway such that their motions and pleadings should be liberally construed so as to decide the issues on the merits, as opposed to technicalities. However, a pro se litigant is presumed to have knowledge of the law and correct legal procedures so that he remains subject to the same rules and procedures to which represented litigants are bound. He is not given greater rights than represented parties, and must bear the consequences of his mistakes. This Court, therefore, must hold [pro se appellants] to the same standard as any represented party.

*State v. Klingensmith,* 9th Dist. Lorain No. 13CA010514, 2015-Ohio-807, ¶ 6, quoting *State v. Taylor*, 9th Dist. Lorain No. 14CA010549, 2014-Ohio-5738, ¶ 5, quoting *Sherlock v. Myers*, 9th Dist. Summit No. 22071, 2014-Ohio-5178, ¶ 3.

**{¶7}** Many of Mr. Eggeman's arguments are not developed in his brief, *see* App.R. 16(A)(7), rely on evidence that was not before the trial court at the time (such as the affidavit of disqualification), or rely on video or audio testimony that Mr. Eggeman asserts does not appear in the transcribed copy. To the extent the foregoing applies, his arguments will not be considered.

Sufficiency of the Evidence

**{¶8}** Mr. Eggeman suggests that there was insufficient evidence to sustain the guilty verdicts.

**{¶9}** The issue of whether a conviction is supported by sufficient evidence is a question of law, which we review de novo. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997).

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus.

**{¶10}** Mr. Eggeman was found guilty of violating R.C. 2921.13(A)(2) and (A)(3) and R.C. 2921.31.

**{¶11}** R.C. 2921.13(A) provides in relevant part that:

> No person shall knowingly make a false statement, or knowingly swear or affirm the truth of a false statement previously made, when any of the following applies:
>
> * * *
>
> (2) The statement is made with purpose to incriminate another.
>
> (3) The statement is made with purpose to mislead a public official in performing the public official's official function.

**{¶12}** "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." Former R.C. 2901.22(B). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." Former R.C. 2901.22(A). A public official includes law enforcement officers. *See* R.C. 2921.01(A).

**{¶13}** R.C. 2921.31(A) states that "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties." "The making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) and 2921.31(A)." *State v. Lazzaro,* 76 Ohio St.3d 261 (1996), syllabus. Nonetheless, "in order to have sufficient evidence to affirm an obstruction of official business conviction, there must be evidence that the defendant's actions hampered or impeded a law enforcement investigation and that the defendant intended such a result to occur." *State v. Jordan,* 9th Dist. Summit No. 27005, 2014-Ohio-2857, ¶ 40.

**{¶14}** Mr. Eggeman's argument seems to focus on whether there was sufficient evidence that he was the individual responsible for sending the emails at issue. "The identity of a perpetrator must be proved by the State beyond a reasonable doubt." *State v. Taylor,* 9th Dist. Summit No. 27273, 2015-Ohio-403, ¶ 6. "[H]owever, identity may be proved by direct or

circumstantial evidence, which do not differ with respect to probative value." *Id.* at ¶ 9. Thus, our review will accordingly be limited to whether there was sufficient evidence that Mr. Eggeman committed the crimes.

{¶15} After reviewing the evidence in a light most favorable to the prosecution, and given Mr. Eggeman's limited arguments, we determine sufficient evidence was presented to sustain the guilty verdicts. The circumstantial evidence would allow a trier of fact to find that Mr. Eggeman sent the emails at issue to himself from the becky.workmam@gmail.com account and that he nonetheless contacted the police on December 6, 2013, asserting that Ms. Workman sent him the emails in order to get Ms. Workman in trouble.

{¶16} Ms. Workman testified at trial and denied sending the emails or even contacting Mr. Eggeman during the relevant period. She also indicated that the last time she saw Mr. Eggeman he had tried to get her to sign a notarized statement, which she refused to do. Ms. Workman indicated that Mr. Eggeman became very upset at her refusal to comply.

{¶17} After Mr. Eggeman continued to report that he was receiving emails from the becky.workmam@gmail.com account, police subpoenaed Google for the IP addresses associated with the Gmail account. Officer Cooper, who specializes in computer forensics, explained that anyone can create an email account through Gmail and the person doing so would not have to supply truthful information. Officer Cooper testified that every computer that is on the internet is assigned an IP address. He stated that an IP address is "like a home address for the computer." Officer Cooper further testified that there are too many devices that connect to the internet to have static IP addresses, and thus, the internet providers have to change the IP addresses over time to allow other devices to connect. With respect to the Gmail account at issue, which was created on July 25, 2013, two IP addresses were associated with it during the relevant December

2013 time frame, one ending in .183.198 and one ending in .178.134. On December 6, 2013, the Gmail account was accessed from the .178.134 address. From December 16, 2013, through December 23, 2013, the Gmail account was accessed from the .183.198 address. Officer Studer testified that the dates and times of the emails corresponded to the login information received from Google.

{¶18} A search of the IP addresses was then run using a website to determine the internet provider associated with the addresses. The internet provider of the two IP addresses was Frontier Communications. Frontier Communications was then subpoenaed, and its records indicated that from December 6, 2013 through December 23, 2013, two physical addresses were associated with the IP addresses; one of which was not associated with Mr. Eggeman and instead belonged to an individual who lived in Medina. The other physical address associated with the IP addresses was Mr. Eggeman's address on Chestnut Street. According to Frontier Communications' records, from December 3, 2013 until December 11, 2013, the .178.134 address was associated with the Chestnut Street address and from December 11, 2013 until December 25, 2013, the .183.198 address was associated with the Chestnut Street address. While the .178.134 address was associated with the Medina household from December 14, 2013 onward, Google's records do not indicate that the Gmail account was accessed from the .178.134 address during that time frame. Accordingly, there was evidence that the Gmail account was only accessed at the Chestnut Street address, where Mr. Eggeman resided, during the relevant time frame.

{¶19} Additionally, police seized two laptop computers from the Chestnut street address. While Ms. Wingate, Mr. Eggeman, Mr. Eggeman's father, and three children all lived at the Chestnut Street address, Ms. Wingate testified that she did not send the emails and the

children were not allowed to use the computers. Additionally, she testified that Mr. Eggeman's father was not often home during the day or on weekends. Officer Cooper created an exact copy of the images of both hard drives and then processed both through forensic software. The software allowed Officer Cooper to search through the data on the hard drives for phrases. In this case, Officer Cooper chose "Workmam" as a search term. The search returned 80 plus results. One of the results appeared to Officer Cooper to be the code for a Google login screen that included the becky.workmam@gmail.com account as a login option. Additionally, the internet search history of one of the computers included "How do I trace the Gmail account?[,]" "Google account recovery[,]" "Google delete account activity[,]" "how to cure Gmail activity[,]" and "remove picture from Google email." There was also evidence that that computer was used to access Mr. Eggeman's email account. The second computer had documents saved on it related to computer hacking included, "Secrets of a Super Hacker[,]" "FBI Situational Information Report, Sovereign Citizens and the Internet[,]" "Guide to Mostly Harmless Hacking[,]" and "Hacking For Dummies." Additionally, there was a document that listed common computer passwords. Finally, there was a document on the computer entitled, "Screw the B*tch, Divorce Tactics for Men." During his testimony, Mr. Eggeman admitted that the searches and documents were his.

{¶20} Moreover, when Officer Studer spoke with Mr. Eggeman about the charges, Mr. Eggeman seemed fairly knowledgeable about computers and IP addresses; he even indicated he had his own IP address memorized.

{¶21} Given all of the foregoing, and viewing the evidence in a light most favorable to the prosecution, we conclude the State presented sufficient evidence that would allow a trier of fact to find beyond a reasonable doubt that Mr. Eggeman was the person responsible for sending

the emails, that he lied to the police in order to incriminate Ms. Workman, and that by doing so he hindered a police officer in the performance of his duties. There was circumstantial evidence that the emails were sent from Chestnut Street, where Mr. Eggeman resided. There was also circumstantial evidence that Mr. Eggeman was the person who sent the emails. The jury could have found it suspicious that the becky.workmam@gmail.com account included a misspelling of Ms. Workman's name and found it unlikely that Ms. Workman would have misspelled her own name if she created the email address. Additionally, there was evidence that Mr. Eggeman was interested in how Gmail accounts work and how to alter their activity. Finally, there was evidence that Mr. Eggeman had a disagreement with Ms. Workman the last time he saw her and that Mr. Eggeman may have held a grudge against her in light of some of the documents kept on the computers in the house on Chestnut Street. Overall, we cannot say that the State failed to produce sufficient evidence that Mr. Eggeman was the person involved in these crimes.

Weight of the Evidence

{¶22} Additionally, Mr. Eggeman suggests his convictions are against the manifest weight of the evidence.

{¶23} When a defendant asserts that his conviction is against the manifest weight of the evidence:

> an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.

*State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶24} Here, Mr. Eggeman focuses on the fact that there was no direct evidence that Mr. Eggeman sent the emails to himself. He notes that Officer Cooper could not testify that the

emails at issue were actually sent from his computer. However, as noted above, circumstantial and direct evidence have the same probative value. *Jenks,* 61 Ohio St.3d 259, at paragraph one of the syllabus. As discussed above, there was substantial circumstantial evidence connecting Mr. Eggeman to the crimes.

{¶25} Mr. Eggeman also argues that the police's investigation improperly focused on him and that Ms. Workman and the person associated with the Medina IP address were not appropriately investigated. We note that the jury was aware of the extent of the investigation, and that the police focused their attention on Mr. Eggeman once it was discovered that the Gmail account was accessed at Mr. Eggeman's residence.

{¶26} Moreover, the jury was also aware that Mr. Eggeman was doing online course work at the American Military University in Intelligence Studies, which could explain some of the internet searches and documents found on his computer. Mr. Eggeman also testified that his email had been hacked, he had changed his picture on Gmail, and that one of his passwords had been stolen. If believed, that testimony could support the conclusion that there were legitimate reasons why the searches and documents were on the computers that were seized. The jury also heard Ms. Wingate testify about allegedly receiving harassing and threatening phone calls and internet messages from Ms. Workman; evidence that, if believed, could support Mr. Eggeman's claims.

{¶27} After thoroughly and independently reviewing the record, we cannot say the jury lost its way in finding Mr. Eggeman guilty of two counts of falsification and one count of obstructing official business. We remain mindful that "[e]valuating evidence and assessing credibility are primarily for the trier of fact." (Citations omitted.) *State v. Bulls*, 9th Dist. Summit No. 27029, 2015-Ohio-276, ¶ 17. The jury was able to hear and observe the witnesses

and evaluate their credibility. We cannot say that the jury's resolution of credibility issues and conflicts in the evidence was unreasonable. We overrule Mr. Eggeman's argument.

Pre-trial Issues

**{¶28}** Mr. Eggeman raises numerous concerns about matters related to the propriety of the complaints, the arraignment procedure, whether there was probable cause to support the warrant, the amount of the initial bond, and the prosecution's request for a mental health examination.

**{¶29}** Mr. Eggeman appears to assert that the complaints, at least with respect to the falsification charges, failed to invoke the trial court's jurisdiction. Because subject-matter jurisdiction involves a court's power to hear a case, the issue can never be waived or forfeited and may be raised at any time. *State v. Mbodji,* 129 Ohio St.3d 325, 2011-Ohio-2880, ¶ 10. "A complaint that meets the requirements of Crim.R. 3 invokes the subject-matter jurisdiction of a trial court." *Id.* at paragraph one of the syllabus. Crim.R. 3 provides that "[t]he complaint is a written statement of the essential facts constituting the offense charged. It shall also state the numerical designation of the applicable statute or ordinance. It shall be made upon oath before any person authorized by law to administer oaths." Given the limitations of Mr. Eggeman's argument on this point, and the contents of the complaints at issue, he has not demonstrated that the complaints failed to comply with Crim.R. 3.

**{¶30}** With respect to Mr. Eggeman's remaining arguments concerning the complaints, the arraignment procedure, and the warrant, Mr. Eggeman has not demonstrated that any motions were filed pursuant to Crim.R. 12(C), and thus, has not demonstrated that he preserved these arguments. *See Mbodji* at ¶ 15-18; Crim.R. 12(D), (H). Mr. Eggeman did not file a motion to

dismiss or a motion to suppress prior to trial. Additionally, when Mr. Eggeman's initial attorney entered a notice of appearance, he waived the reading of the affidavit.

**{¶31}** To the extent Mr. Eggeman asserts that his initial bond was unconstitutionally high, we note that it was shortly thereafter modified to allow him to post 10% of the $5,000 instead of requiring $5,000 cash or surety only. Mr. Eggeman was then released. Mr. Eggeman has not asserted that the modified bond was unconstitutionally high; accordingly, it appears this argument is moot.

**{¶32}** Finally, to the extent Mr. Eggeman suggests that the prosecution requested an illegal mental health examination, we note that nothing in record indicates that he was actually subjected to a mental health examination. Therefore, we fail to see what prejudice Mr. Eggeman has suffered. *See* Crim.R. 52(A).

Right to Self-Representation

**{¶33}** Mr. Eggeman also argues he was denied his constitutional right to represent himself.

**{¶34}** "The Sixth Amendment guarantees that a criminal defendant has an independent constitutional right of self-representation and that he may proceed to defend himself without counsel when he voluntarily, and knowingly and intelligently elects to do so." (Internal quotations omitted.) *State v. Schleiger,* 141 Ohio St.3d 67, 2014-Ohio-3970, ¶ 18, quoting *State v. Gibson,* 45 Ohio St.2d 366 (1976), paragraph one of the syllabus, citing *Faretta v. California,* 422 U.S. 806 (1975). "The Ohio Supreme Court has clearly and repeatedly held that a criminal defendant waives the right to self-representation if he fails to assert it in both a timely and unequivocal manner." *State v. Perry,* 9th Dist. Summit No. 25271, 2011-Ohio-2242, ¶ 12. "If a

trial court denies the right to self-representation when the right has been properly invoked, the denial is per se reversible error." *State v. Neyland,* 139 Ohio St.3d 353, 2014-Ohio-1914, ¶ 71.

{¶35} Mr. Eggeman has not demonstrated the trial court committed error. Prior to trial, Mr. Eggeman's third attorney filed a motion to withdraw from representing Mr. Eggeman. The trial court denied the motion. On the day of trial, the trial court informed Mr. Eggeman that he could dismiss his attorney, and that he had the right to represent himself. However, the trial court also informed Mr. Eggeman, that the matter was proceeding to trial that day and explained Mr. Eggeman's options: (1) If Mr. Eggeman had already retained another attorney, he could bring that attorney in to represent him; (2) Mr. Eggeman could represent himself and the trial court would appoint Mr. Eggeman's third attorney to assist Mr. Eggeman should he need it; or (3) Mr. Eggeman could continue with his third attorney. The record is clear that Mr. Eggeman chose to continue with his third attorney representing him.

{¶36} To the extent Mr. Eggeman asserts that the trial court erred in denying him the right to represent himself when he twice raised the issue mid-trial, we conclude that Mr. Eggeman has failed to demonstrate that his request was timely. *See Neyland* at ¶ 76 (noting examples of untimely requests); *see also State v. Owens,* 9th Dist. Summit No. 25389, 2011-Ohio-2503, ¶ 19. Given Mr. Eggeman's limited argument, he has not demonstrated error. His argument is overruled.

Ineffective Assistance of Counsel

{¶37} Mr. Eggeman also argues that his counsel was ineffective.

{¶38} This Court must analyze claims of ineffective assistance of counsel under a standard of objective reasonableness. *See Strickland v. Washington*, 466 U.S. 668, 688 (1984); *State v. Bradley*, 42 Ohio St.3d 136, 142 (1989). Under this standard, a defendant must show (1)

deficiency in the performance of counsel "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment[,]" and (2) that the errors made by counsel were "so serious as to deprive the defendant of a fair trial[.]" *Strickland* at 687. "To warrant reversal, '[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Bradley* at 142, quoting *Strickland* at 694. In applying this test, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Strickland* at 689. "This Court need not address both prongs of *Strickland* where an appellant fails to prove either prong." *State v. Buzek,* 9th Dist. Medina No. 14CA0011-M, 2015-Ohio-4416, ¶ 5.

{¶39} Specifically, Mr. Eggeman argues that trial counsel was ineffective by taking sides with the prosecution, refusing to question the trial court about the prosecution's use of evidence, and in failing to ask the trial court to instruct the jury to disregard statements that related to evidence excluded by a motion in limine.

{¶40} With respect to Mr. Eggeman's first argument concerning his attorney allegedly agreeing with the prosecutor, arguing with Mr. Eggeman, and refusing to ask certain questions, it appears that all of the allegations relate to discussions that are not part of the transcript. Accordingly, we cannot consider Mr. Eggeman's claim. *See Buzek* at ¶ 7 ("[A] claim of ineffective assistance of counsel on direct appeal cannot be premised on decisions of trial counsel that are not reflected in the record of proceedings * * * [and][s]peculation regarding the prejudicial effects of counsel's performance will not establish ineffective assistance of counsel.") (Internal quotations and citations omitted.).

**{¶41}** With respect to Mr. Eggeman's remaining arguments concerning the alleged ineffective assistance of trial counsel, Mr. Eggeman has not developed these issues. *See* App.R. 16(A)(7). From his limited argument, we cannot determine whether trial counsel's performance was within the gamut of reasonable trial strategy or whether Mr. Eggeman was prejudiced by it. Thus, we decline to further consider the arguments and overrule them on that basis.

Hearsay

**{¶42}** Mr. Eggeman also asserts that the emails he is accused of sending constituted hearsay and were not admissible because they were "not official court documents[.]" We note that trial counsel did not object to testimony regarding the emails and did not object to the admission of the emails themselves. *See* Evid.R. 103(A)(1). Accordingly, Mr. Eggeman has forfeited all but plain error. *See* Evid.R. 103(D). However, as Mr. Eggeman has not argued plain error, we will not sua sponte undertake an analysis on his behalf. *See State v. Hughes,* 9th Summit No. 27061, 2014-Ohio-4039, ¶ 9.

**{¶43}** Mr. Eggeman's arguments are overruled.

III.

**{¶44}** The judgment of the Wadsworth Municipal Court is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Wadsworth Municipal Court, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

CARLA MOORE
FOR THE COURT

WHITMORE, P. J.
SCHAFER, J.
CONCUR.

APPEARANCES:

DANIEL J. EGGEMAN, pro so, Appellant.

THOMAS J. MORRIS, Assistant Director of Law, for Appellee.