[Cite as *State v. Chait*, 2012-Ohio-6104.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 12CA0011-M |
| | |
| Appellee | |
| | |
| v. | APPEAL FROM JUDGMENT |
| | ENTERED IN THE |
| DALE A. CHAIT | COURT OF COMMON PLEAS |
| | COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 11-CR-0075 |

DECISION AND JOURNAL ENTRY

Dated: December 26, 2012

---

BELFANCE, Judge.

{¶1} Defendant-Appellant Dale Chait appeals from his convictions in the Medina County Court of Common Pleas. For the reasons set forth below, we reverse.

I.

{¶2} This matter involves Mr. Chait's failure to fully perform under a remodeling contract he entered into with Billy Porter and Debra Porter. Mr. Chait was indicted in February 2011 on one count of forgery in violation of R.C. 2913.31(A)(3). Subsequently, Mr. Chait was indicted on one count of theft in violation of R.C. 2913.02(A)(2) and one count of theft in violation of R.C. 2913.02(A)(3). The forgery count was separately tried, and Mr. Chait was found not guilty of that charge. A second jury trial was held, and the jury found Mr. Chait guilty of both theft counts and with respect to both counts concluded that the amount of the theft was greater than $500 and greater than $1000. Mr. Chait was sentenced to five years of community control and ordered to pay $27,000 in restitution.

{¶3}    Mr. Chait has appealed, raising three assignments of error for our review.

II.

ASSIGNMENT OF ERROR I

THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION IN VIOLATION OF THE APPELLANT'S RIGHT TO DUE PROCESS OF LAW AS GUARANTEED BY ARTICLE I, SECTION 10 OF THE OHIO CONSTITUTION AND THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION.

{¶4}    Mr. Chait asserts in his first assignment of error that his convictions for theft are based upon insufficient evidence. We agree.

{¶5}    In determining whether the evidence presented was sufficient to sustain a conviction, this Court reviews the evidence in a light most favorable to the prosecution. *State v. Jenks*, 61 Ohio St.3d 259, 274 (1991). Furthermore:

> An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*Id.* at paragraph two of the syllabus.

{¶6}    Mr. Chait was found guilty of violating R.C. 2913.02(A)(2) and (A)(3). The statute provides that:

> (A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
>
> * * *
>
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
>
> (3) By deception[.]

R.C. 2913.02(A)(2),(A)(3). "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." R.C. 2901.22(B).

> "Deception" means knowingly deceiving another or causing another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.

R.C. 2913.01(A). R.C. 2913.01(C) provides that deprive means

> to do any of the following:

> (1) Withhold property of another permanently, or for a period that appropriates a substantial portion of its value or use, or with purpose to restore it only upon payment of a reward or other consideration;

> (2) Dispose of property so as to make it unlikely that the owner will recover it;

> (3) Accept, use, or appropriate money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration.

{¶7} "When proving a violation of [theft by deception pursuant to] R.C. 2913.02(A)(3), the State must demonstrate that at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange." *State v. Coleman,* 2d Dist. No. 2002 CA 17, 2003-Ohio-5724, ¶ 29. "Additionally, for a violation of R.C. 2913.02(A)(2), the State must prove that at the time the defendant exceeded the scope of consent of the owner of the money, he had the intent to deprive the owner of the money." *Id.* at ¶ 29.

**{¶8}** In the instant matter, even when viewing the evidence in a light most favorable to the prosecution, we conclude that the State failed to establish that Mr. Chait had the purpose to deprive the Porters of money either by deception or by exceeding the scope of the Porters' consent.

**{¶9}** The testimony revealed the following facts relevant to our discussion. Mr. and Mrs. Porter own a house in Hinckley where they live with their daughter, son-in-law, and grandchildren. In addition, several elderly people live in portions of the house; the Porters are licensed by the State to provide care for the elderly residents who cannot otherwise care for themselves.

**{¶10}** The Porters met Mr. Chait through his mother, Judith Kukla, to whom they had gone for a healing service. Ms. Kukla recommended Mr. Chait for some remodeling work that the Porters were looking to have done. Specifically, the Porters wanted to remodel their 24 foot wide by 36 foot deep garage into a living space to house additional residents. As it existed prior to the remodeling, it was one room with the drywall and insulation. It was also partially wired and had a bathroom area. The Porters wished to convert the structure into a living area, which would include two bedrooms with closets, a family room, a laundry room, and an extended bathroom including a wheelchair-accessible shower. Mr. Chait bid $26,700. The Porters asserted that Mr. Chait agreed to complete the job in two to four weeks, which would have been by the end of September 2009. The Porters assert that the first contract they received had a September 2009 completion date. The first contract is not a part of the record. However, the second contract, which the Porters signed, indicated that Mr. Chait had until September 31, 2010, to "substantially" complete the contract. Mr. Porter indicated that Mr. Chait told him that the

second contract was the same, it was just more thorough. The Porters admit that they did not read the contract they signed. The contract stated that the project was to

> [c]hange garage space into living area[.] Install 6 new windows and relocate 2 others. One man door with action cranks on both sides to be install[ed] to access outside. Install to plans specs 2 bedrooms, 1 living room, 1 entrance/utility room, 1 bathroom, and one hallway. This project is figured from start to final paint (except for all electrical[])[.]

**{¶11}** The Porters also maintained that Mr. Chait was to buy and put in a furnace, although such is not mentioned in the contract. The price under the signed contract was $26,700, with $24,030 due at the commencement of the project and $2,670 due at the completion date. The Porters gave Mr. Chait two checks on September 2, 2009: one for $9,030 from the Porters' business account, and one for $15,000 from their personal account. The memo portion of the checks states "Remodel[.]" Both checks were cashed. In addition, on November 3, 2009, the Porters wrote Mr. Chait a check out of their personal account for $1,600. The memo of that check specified "Elect. Remod[.]" Mr. Porter testified that that check was for electrical wiring. It was also cashed.

**{¶12}** It is clear from the Porters' testimony that Mr. Chait failed to complete the job and that they were dissatisfied with the quality of the work. Nonetheless, it is also clear that Mr. Chait performed a significant amount of work in the Porters' garage. Mr. Chait did approximately 70% of the framing work, some drywall work, installed the shower, ran plumbing up into the attic, ran wiring, put up particle board to close an opening, bought and installed windows, which in part involved removing some doors and doing some framing, and began leveling portions of the floor. The Porters testified that the work that Mr. Chait performed was shoddy and of poor quality. They maintained that they had to redo much of what Mr. Chait had done.

{¶13} It is undisputed that Mr. Chait began work on the project the day or two after the contract was signed. According to Mr. Porter, Mr. Chait showed up with a couple other people and started working. Mr. Porter testified that Mr. Chait told him that they had to go to the warehouse in the morning and came to Mr. Porter's house after that. Mr. Porter indicated that Mr. Chait and his crew would work a couple hours until lunch time, go to lunch, return, and then work for a couple more hours. It is clear that the Porters were not happy with the pace at which Mr. Chait was completing the work. Mr. Porter testified that Mr. Chait informed Mr. Porter that Mr. Chait was having trouble with permits and that a dye check test with the septic system indicated that there was insufficient flow to accommodate the additional bedrooms. Further, Mr. Chait told the Porters that for part of the time, he was sick and unable to work. At trial, Charles Huber, the chief building official from the Medina County Building Department, confirmed that Mr. Chait had come to the building department and made inquiries concerning permits.

{¶14} Mr. Chait continued to come to the Porters' house and work from September until sometime in November 2009. According to Mrs. Porter, the last time the Porters saw Mr. Chait at the house was either on November 4th or 5th 2009, shortly after they wrote Mr. Porter the $1600 check for "Elec. Remod." However, Mr. Porter testified that he sent Mr. Chait a text message on November 25, 2009, stating, "I went in the garage, noticed that your tool boxes are gone. You're not coming back, are you?" Mr. Porter indicated that Mr. Chait replied and accused Mr. Porter of stealing his tool boxes. The Porters asserted that over November and December 2009, they begged Mr. Chait to return and finish the job. Additionally, the Porters contacted Ms. Kukla in an effort to get Mr. Chait to finish the job. Ms. Kukla verified that Mrs. Porter had called her twice, that Mrs. Porter screamed at her, and that, ultimately Ms. Kukla had

to hang up on Mrs. Porter. Ms. Kukla asserted at trial that she did contact Mr. Chait to ask what was going on and he told her that he was working with the building department.

{¶15} At some point during this time, Mr. Porter text messaged Mr. Chait and told him that he "was going to put [Mr. Chait] and his mother in jail for what they [had] done[.]" Mr. Chait called Mr. Porter and threatened him saying "[Mr. Chait] would destroy [Mr. Porter] and [his] family[.]" Mrs. Porter asserted that Mr. Chait had threatened to kill the Porters. After that, the Porters barred Mr. Chait from their property. The Porters ultimately undertook to have the project completed. Mr. Porter did some of the labor along with his son-in-law and hired other people to do the remaining work. Mr. Porter asserted that he spent an additional $29,000 to complete the project and that it was finished sometime late in 2010. However, Mr. Porter further indicated that he "could have went out and spent $50,000 and got someone that was reputable to do the job and had it done[.]" Notably, there was no evidence presented indicating the monetary value of the labor and supplies expended by Mr. Chait.

{¶16} After this, Mr. Chait turned Mr. Porter into the building department and said that the Porters were converting a barn into a house and that the Porters did not have any of the appropriate permits. The building department did come out to the Porters' property and brought them a letter of exemption and found that they were doing nothing wrong.

{¶17} Mr. Huber averred that Mr. Chait brought an inquiry to the department's attention on December 2, 2010, raising concerns that the Porters were engaging in construction projects without the proper permits. After conducting research and consulting with the Medina County Prosecutors' Office, Mr. Huber discovered that there were provisions in the Ohio Revised Code which exempted the Porters from needing permits from the building department.

Mr. Huber then sent a letter dated December 21, 2010, to the Porters informing them of his research.

{¶18} Mr. Huber also testified that his staff informed him that Mr. Chait had previously come into the department's office and talked to the staff about obtaining permits. With respect to the septic system, the staff informed Mr. Chait that he needed to talk to the Medina County Health Department. Ultimately, Mr. Chait never applied for any permits.

{¶19} Officer Chris Millhorn testified concerning the theft by deception complaint the Porters filed that he investigated in March 2011. He interviewed several people including Mr. Porter, Mr. Huber, and Mr. Chait. Mr. Chait provided a written statement which stated that

> I Dale Chait * * * was paid by Bill and Debi Porter for the remodeling of their garage. * * * I was put at a stand[-]still w/ building & health dept. because the Porters were not up to code. This project was fully supplied w/ every item for construction except front door. And this project had these items installed ready for Inspection. Porters asked me to continue without permit. I refused and told them they have to get th[eir] septic system ok before I continue. I was kicked off their site and they are su[ing]me in civil court in Cuyahoga County presently. I never refuse[d] to complete work[.] I do have the [] obligation to follow building laws in Medina. Therefore I cannot do work unless approved by inspectors from the Health & Building Dept.

{¶20} When viewing the evidence in a light most favorable to the prosecution, we cannot say that the State presented sufficient evidence, if believed, which would allow a reasonable jury to conclude that, at the time Mr. Chait took the money, he had no intent to perform under the contract in exchange or that, at the time Mr. Chait exceeded the scope of the Porters' consent, he had the intent to deprive them of the money. *See Coleman,* 2003-Ohio-5724, ¶ 29.

{¶21} We are not unmindful of the problem the Porters faced nor do we condone Mr. Chait's actions in light of the evidence in the record. However, the issue before this Court is not whether there was sufficient evidence that Mr. Chait breached the contract he entered into with

the Porters; it is whether there was sufficient evidence presented that Mr. Chait committed the crimes of theft by deception and theft beyond the scope. The State asserts that there was evidence that Mr. Chait "had purpose to deprive the Porters of money by promising to do work with no real intention to substantially fulfill his agreed responsibilities." Further, the State asserts that Mr. "Chait exceeded the scope of the Porters' consent when he refused to finish the work, refused to give supplies he had purchased already, if any, and threatened the Porters after lying to excuse his nonperformance." The evidence establishes that the Porters paid Mr. Chait $25,630. The evidence also establishes that Mr. Chait showed up to work on the project the day or two after the contract was signed, brought people with him to help, and continued to work on the project from September until sometime in November 2009. There is also evidence that Mr. Chait did perform a significant amount of work: he bought and installed windows, did framing, wiring, and plumbing, installed a shower, and began leveling portions of the floor. There is no evidence to establish the value of the services and supplies Mr. Chait provided. However, Mr. Porter testified that he "could have went out and spent $50,000 and got someone that was reputable to do the job and had it done[.]" Yet, he hired someone to do it for around $26,000. In light of all the time, supplies, and labor that Mr. Chait expended upon the project, we cannot conclude that there was sufficient evidence of theft. Specifically, there was not sufficient evidence that Mr. Chait had the purpose to deprive the Porters of money either by deception or by exceeding the scope of their consent. *See State v. Walters,* 8th Dist. No. 91586, 2009-Ohio-1251, ¶18-20 (concluding the evidence was insufficient to support a conviction for theft by deception where the defendant accepted a down payment, did not return the money, and, according to the victim, failed to complete any work but did buy some materials); *State v. Bakies,* 71 Ohio App.3d 810, 813-815 (8th Dist.1991) (concluding the evidence was insufficient

to sustain a finding of guilt for theft by deception where there was no evidence that at the time the loan was made, the defendant did not have a good faith intent to repay it); *see also State v. Dortch,* 2d Dist. No. 17700, 1999 WL 819569, *4 (Oct. 15, 1999) (noting that theft beyond the scope requires that "the individual begins to use the property for something outside what the owner specifically authorized[]"); *Coleman,* 2003-Ohio-5724, at ¶40-41 (determining the defendant's convictions for theft by deception and beyond the scope were against the manifest weight of the evidence where the defendant completed a significant amount of work on the project and the defendant could use the money for any purpose as long as performed under the contract); *State v. Wells,* 2d Dist. No. 2008 CA 6, 2009-Ohio-908, ¶ 45-46 (concluding that, assuming there was sufficient evidence of theft by deception, defendant's conviction was against the manifest weight of the evidence where defendant began work on the home after receiving money); *Wells* at ¶ 48 (concluding that the weight of the evidence did not support the finding that the defendant committed theft beyond the scope as there was no evidence of intent to deprive where he exceeded the scope of consent by not purchasing bricks, but still used the money to purchase other supplies for the project). Even when examining the Porters' payment of $1600 to Mr. Chait we fail to see evidence of either theft by deception or theft beyond the scope. The check was for "Elec. Remod." It is clear from the contract that electrical work was not included in the contract price. It is likewise clear that, at the time the Porters' gave Mr. Chait the $1600 check, Mr. Chait had done wiring work. There is nothing in the record to indicate whether the $1600 check was for past work or for future work. The fact that there was substantial evidence that Mr. Chait's workmanship was subpar, does not detract from the fact that labor and services were provided for the money that the Porters supplied. The State failed to produce sufficient evidence that Mr. Chait had the purpose to deprive the Porters of money or that, at the time he

took the money, he had no intent to perform under the contract. *See* R.C. 2913.02(A)(3). Moreover, the State failed to produce sufficient evidence of theft beyond the scope. *See* R.C. 2913.02(A)(2). Accordingly, we sustain Mr. Chait's first assignment of error and remand the matter so that the trial court can issue an order of discharge.

### ASSIGNMENT OF ERROR II

APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE IN VIOLATION OF THE OHIO AND UNITED STATES CONSTITUTIONS.

### ASSIGNMENT OF ERROR III

THE COURT ERRED AS A MATTER OF LAW AND ABUSED IT[S] DISCRETION WHEN IT ORDERED THE APPELLANT TO PAY $27,000.00 IN RESTITUTION, BECAUSE THE AMOUNT ORDERED WAS ABOVE THE STATUTORY LIMITS FOR A FELONY OF THE FIFTH DEGREE.

{¶22} Mr. Chait asserts in his second assignment of error that his convictions are against the manifest weight of the evidence. He argues in his third assignment of error that the restitution that the trial court ordered was erroneous. In light of our resolution of Mr. Chait's first assignment of error, his remaining assignments of error are moot, and we decline to address them. *See* App.R. 12(A)(1)(c).

### III.

{¶23} In light of the foregoing, we sustain Mr. Chait's first assignment of error and reverse his convictions. Mr. Chait's remaining assignments of error are moot. The judgment of the Medina County Court of Common Pleas is reversed and the matter is remanded for the court to issue an order of discharge.

Judgment reversed,
and cause remanded.

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellee.

EVE V. BELFANCE
FOR THE COURT

MOORE, P. J.
DICKINSON, J.
CONCUR.


APPEARANCES:

PAUL M. GRANT, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.