[Cite as *State v. Kuhar*, 2016-Ohio-5280.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 15A0053-M |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| JOHN D. KUHAR | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 14 CR 0664 |

DECISION AND JOURNAL ENTRY

Dated: August 8, 2016

WHITMORE, Judge.

{¶1} Appellant, John D. Kuhar, appeals from the June 16, 2015 judgment of the Medina County Court of Common Pleas. This Court affirms.

I

{¶2} Mr. Kuhar owns Medina Motorsport, Inc., a company that does custom restoration work on automobiles and builds engines, transmissions and differentials. Medina Motorsport, Inc. has been in existence for approximately thirty-six years. In March of 2014, Robert Wattenbarker contacted Mr. Kuhar regarding a remanufactured Richmond transmission for his '77 Chevy El Camino. As a down payment for the transmission, Mr. Wattenbarker mailed a check, dated April 3, 2014, to "Medina Motorsport[,] Inc[.]" in the amount of $1,600. The record indicates that Mr. Kuhar received the check and deposited it into his RBS Citizens Bank, Charter One account.

**{¶3}** After contacting Mr. Kuhar several times regarding his progress on the transmission, and not getting a satisfactory response, Mr. Wattenbarker contacted Detective Mary Gross with the Medina Police Department. In early July of 2014, Detective Gross and another detective visited Mr. Kuhar at his place of business about this issue. At that time, Mr. Kuhar admitted to "enter[ing] into a business arrangement or an agreement with Mr. Wattenbarker for this transmission." Detective Gross testified that during her initial conversation with Mr. Kuhar, he stated that Mr. Wattenbarker "had become somewhat irritating with the phone calls" because "[h]e was calling a lot to check on the transmission." Detective Gross also stated that Mr. Kuhar advised her that he had ordered new parts for the transmission, but due to his workload, he "just hadn't gotten to it yet." Detective Gross informed Mr. Kuhar that Mr. Wattenbarker was "not happy about the situation," because he paid money "and had not received anything as of yet for that money that he had paid." At that time, Detective Gross "strongly encouraged" Mr. Kuhar to contact Mr. Wattenbarker in order to resolve the issue.

**{¶4}** Subsequently, Detective Gross learned that Mr. Kuhar contacted Mr. Wattenbarker via telephone two days later. However, as of September of 2014, Mr. Wattenbarker still had not received his transmission or a refund of the $1,600 down payment for the transmission.

**{¶5}** Mr. Kuhar was indicted on two counts of theft in violation of R.C. 2913.02(A)(2) and R.C. 2913.02(A)(3), felonies of the fifth degree. He waived his right to a jury trial and a bench trial ensued. The trial court found Mr. Kuhar guilty on both counts of theft and sentenced him to two years of community control. It also imposed the following sanctions and conditions: (1) drug/alcohol screening; (2) no new offenses, including misdemeanors; and (3) theft counseling through Alternative Paths. Upon any violation of this sentence, the trial court would

sentence Mr. Kuhar to a prison term of two years. Further, prior to sentencing, the record indicates that Mr. Kuhar paid restitution to Mr. Wattenbarker in the amount of $1,600.

{¶6}  Mr. Kuhar now appeals, raising three assignments of error.

II

Assignment of Error Number One

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO QUESTION [MR. KUHAR] REGARDING SIMILAR ACTS[.]

{¶7}  In his first assignment of error, Mr. Kuhar states that the trial court erred in allowing the State to cross-examine him regarding other acts. Specifically, Mr. Kuhar alleges that the State attempted to prove that he committed the act of theft against Mr. Wattenbarker by eliciting testimony regarding unfinished projects for other discontented customers.

{¶8}  The State argues that it properly used other acts evidence to show that Mr. Kuhar never *intended* to perform the transmission work, or refund the money, at the time he and Mr. Wattenbarker entered into the contract. Further, the State argues that (1) Mr. Kuhar suffered no prejudice due to this line of questioning; (2) if an error existed, it was harmless; and (3) even in excising this line of questioning from the record, an overwhelming amount of evidence exists as to Mr. Kuhar's guilt.

{¶9}  It is well-settled that the trial court possesses broad discretion in determining the admission of evidence. *State v. Maurer,* 15 Ohio St.3d 239, 265 (1984). "As such, this [C]ourt will not overturn a trial court's evidentiary determination in the absence of an abuse of discretion that resulted in material prejudice to the defendant." *State v. Myers,* 9th Dist. Summit No. 25737, 2012–Ohio–1820, ¶ 9. An abuse of discretion "implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219 (1983).

**{¶10}**  Pursuant to Evid.R. 404(B):

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.  It may, however, be admissible for other purposes, such as *proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident*.

(Emphasis added.)  "Proof of one of these purposes must go to an issue which is material in proving the defendant's guilt for the crime at issue." *State v. Auerswald*, 9th Dist. Medina No. 11CA0053-M, 2013-Ohio-742, ¶ 10, citing *State v. DePina*, 21 Ohio App.3d 91, 92 (9th Dist.1984), citing *State v. Burson*, 38 Ohio St.2d 157, 158 (1974).

Additionally, R.C. 2945.59 provides:

> In any criminal case in which the defendant's motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show his motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant.

**{¶11}**  In *State v. Roper*, 9th Dist. Summit No. 22566, 2005-Ohio-6327, ¶ 9, *rev.'d on other grounds*, this Court stated that:

> [T]he standard for determining admissibility of such evidence is strict, and the statute section and rule must be construed against admissibility. * * * However, this strict admissibility standard must be considered contemporaneously with the fact that the trial court "occupies a 'superior vantage' in determining the admissibility of evidence."

*Id*., quoting *State v. Ali*, 9th Dist. Summit No. 18841, 1998 WL 597654, *2 (Sept. 9, 1998), quoting *State v. Rutledge*, 9th Dist. Lorain No. 96CA006619, 1997 WL 760916, *4 (Nov. 19, 1997).  "Further, in *State v. Curry*, 43 Ohio St.2d 66, 72-73 (1975), the Supreme Court of Ohio stated that 'other acts' testimony which forms part of the immediate background of the charged crime may be admissible as demonstrating a scheme, plan, or system." *Auerswald* at ¶ 11.  This

is because "[a] jury is entitled to know the 'setting' of a case, including evidence of other crimes that explains the circumstances or tends logically to prove any element of the offense charged." *State v. Thomas*, 9th Dist. Lorain No. 10CA009756, 2011-Ohio-1629, ¶ 17, quoting *State v. Wilkinson*, 64 Ohio St.2d 308, 317 (1980), quoting *United States v. Roberts*, 548 F.2d 665, 667 (6th Cir.1977).

{¶12} In the present matter, over defense objection, the State cross-examined Mr. Kuhar as follows:

[The State]:  * * * Do you recall the people sitting in the back of the courtroom?
[Mr. Kuhar]:  Pardon?
[The State]:  Do you recall the people sitting in the back of the courtroom?  Do you recall them?
[Mr. Kuhar]:  Yeah, I do.
[The State]:  Are they customers of yours?
[Mr. Kuhar]:  Yes.
[The State]:  Was any of their property recovered by the Medina police the day you were arrested?
[Mr. Kuhar]:  Not that I know of.
[The State]:  Not that you know of?
[Mr. Kuhar]:  No
[The State]:  Are you saying "no"?
[Mr. Kuhar]:  "No."
[The State]:  What type of work were you doing for them?
*[Defense Counsel]:  Objection.*
*The Court: Overruled.  You can answer.*
[Mr. Kuhar]:  I was restoring a classic car for them.
[The State]:  What kind of classic car?
[Mr. Kuhar]:  MG TD.
[The State]: And that project was never completed?
[Mr. Kuhar]:  No, it was not.
[The State]:  And, in fact, that - you returned some property - but not all - to them, and the Medina police had to retrieve the rest of it.  Is that true?
[Mr. Kuhar]:  No.
[The State]:  What's not true about it?
[Mr. Kuhar]:  I never gave anybody any parts.
[The State]:  So you still have them?
[Mr. Kuhar]:  I still have all kinds of parts.  Yes, I do.
[The State]:  And do you still have the car?
[Mr. Kuhar]:  Yes, I do.

[The State]: Okay. And how much have they given you to restore that car, and when did you start this project?

[Mr. Kuhar]: I don't recall that. I don't know that. I don't have the paperwork.

[The State]: How long have you had the car?

[Mr. Kuhar]: Seven, eight years.

[The State]: Seven or eight years?

[Mr. Kuhar]: Yes.

[The State]: And they've paid you well over sixteen thousand dollars, haven't they?

[Mr. Kuhar]: No.

[The State]: They have not?

[Mr. Kuhar]: No.

[The State]: Okay. You're saying that you don't recall Det[ective] Gross taking parts from your shop that day?

[Mr. Kuhar]: No, I don't remember that.

[The State]: Okay. And do you know the Bakemans?

[Mr. Kuhar]: Yes.

[The State]: And you were doing a Triumph for them?

[Mr. Kuhar]: Yes.

*[Defense Counsel]: Objection, again.*

*The Court: I'm going to overrule the objection. You can continue.*

[The State]: And how much had the Bakemans given you for a project that was uncompleted?

[Mr. Kuhar]: Sixty thousand dollars.

[The State]: Or eighty thousand dollars?

[Mr. Kuhar]: Could be eighty.

[The State]: Yes. And it was not completed, and the police had to recover some of the property for them, didn't they?

[Mr. Kuhar]: He stopped the project, yes.

\* \* \*

(Emphasis added.)

{¶13} Evid.R. 103(A)(1) provides that "[e]rror may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and \* \* \* [i]n case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]" *See State v. Maple*, 9th Dist. Summit No. 25331, 2011-Ohio-1516, ¶ 22.

{¶14} Here, the record indicates that Mr. Kuhar's trial counsel only raised two general objections during the above-cited testimony by stating "[o]bjection," and then, "[o]bjection,

again." However, trial counsel did not specifically object to Mr. Kuhar's testimony as being improper other acts evidence pursuant to Evid.R. 404(B). As such, it is unclear whether trial counsel's objections pertained to Evid.R. 404(B), other acts evidence, Evid.R. 402, relevance, or some other basis. (Evid.R. 402 states that "[a]ll relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, by the Constitution of the State of Ohio, by statute enacted by the General Assembly not in conflict with a rule of the Supreme Court of Ohio, by these rules, or by other rules prescribed by the Supreme Court of Ohio. Evidence which is not relevant is not admissible").

{¶15} Accordingly, Mr. Kuhar has forfeited all but plain error as to his Evid.R. 404(B) challenge. *See Maple* at ¶ 23. However, because Mr. Kuhar has not argued plain error, we will not sua sponte undertake an analysis on his behalf. *See State v. Eggeman,* 9th Dist. Medina No. 14CA0085-M, 2015-Ohio-5177, ¶ 42, citing *State v. Hughes,* 9th Dist. Summit No. 27061, 2014–Ohio–4039, ¶ 9.

{¶16} Mr. Kuhar's first assignment of error is overruled.

Assignment of Error Number Two

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO QUESTION [MR. KUHAR] REGARDING ANY ATTEMPT TO PAY RES[T]IT[U]TION AFTER [MR. KUHAR] WAS INDICTED RESULTING IN PROSECUTORIAL MISCONDUCT[.]

{¶17} In his second assignment of error, Mr. Kuhar argues that the trial court erred in allowing the State to question Mr. Kuhar about his willingness to refund Mr. Wattenbarker's money after the indictment was filed, resulting in prosecutorial misconduct.

{¶18} "The test for prosecutorial misconduct is whether remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused." *State v. Cornwell,* 86 Ohio St.3d 560, 570 (1999). "The touchstone of analysis 'is the fairness of the trial, not the

culpability of the prosecutor.'" *Id.* at 570-571, quoting *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In deciding whether to reverse a conviction based upon improper statements, an appellate court must review the claim against the entire record and determine whether the alleged prosecutorial misconduct deprived the defendant of a fair trial. *State v. Jenks*, 61 Ohio St.3d 259, 281 (1991).

{¶19} According to Mr. Kuhar, prosecutorial misconduct occurred during his cross-examination, wherein the following exchange occurred:

> [The State]: And you sold the transmission that you allegedly bought?
> [Mr. Kuhar]: Yes.
> [The State]: So where is Mr. Wattenbarker's money?
> [Mr. Kuhar]: I couldn't give it to him.
> [The State]: You what?
> [Mr. Kuhar]: I couldn't give it to him.
> [The State]: You couldn't give it to him?
> [Mr. Kuhar]: No. I was told I couldn't give it to him.
> [The State]: You were told you couldn't give it to him?
> [Mr. Kuhar]: I was told I couldn't have contact with him.
> [The State]: Well, after you got indicted.
> [Mr. Kuhar]: Yes.
> [The State]: Okay. Well, maybe, maybe not.
> * * *
> [The State]: No, I don't think it was. You heard his testimony. He wanted his money back, and you told him you were going to give him his money back.
> [Mr. Kuhar]: I said as soon as I sell the transmission, I'll give his money back.
> [The State]: Okay.
> [Mr. Kuhar]: And before that happened, I was arrested. So that was his choice to proceed that way.
> [The State]: And you haven't given his money back?
> [Mr. Kuhar]: I'm not allowed to after October 10th.
> [The State]: Says who?
> [Mr. Kuhar]: Says my attorney and you.
> [The State]: Not me.
> [Mr. Kuhar]: You said I couldn't have contact with him.
> [The State]: You and I have never met. We've never had any contact.
> [Mr. Kuhar]: The paperwork said I couldn't have contact with him.
> * * *

**{¶20}** Because Mr. Kuhar's trial counsel failed to object to the alleged prosecutorial misconduct, Mr. Kuhar forfeits all but plain error. *See State v. Reed*, 9th Dist. Wayne No. 12CA0051, 2013-Ohio-3970, ¶ 57, citing *State v. Chapman*, 9th Dist. Lorain No. 07CA009161, 2008-Ohio-1452, ¶ 23. Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "'[T]he accused bears the burden of proof to demonstrate plain error on the record * * * and must show an error, i.e., a deviation from a legal rule that constitutes an obvious defect in the trial proceedings[.]'" *State v. Jackson*, 9th Dist. Summit No. 27479, 2015-Ohio-5096, ¶ 51, quoting *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, ¶ 22. "'However, even if the error is obvious, it must have affected substantial rights, and [w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial.'" *Id.* "'The accused is therefore required to demonstrate a reasonable probability that the error resulted in prejudice * * *.'" *Id.*

**{¶21}** After considering the assistant prosecutor's line of questioning, we determine that it does not reveal that the trial court committed plain error by failing to sua sponte strike it. First, the questioning of Mr. Kuhar does not rise to the level of "badger[ing]" a witness, as Mr. Kuhar suggests in his argument. The assistant prosecutor started out by generally asking Mr. Kuhar about refunding Mr. Wattenbarker's money for the transmission. Mr. Kuhar *responded* by stating that he could not refund the money because he was "not allowed to after October 10th." The assistant prosecutor simply asked some follow-up questions regarding Mr. Kuhar's response, and the questioning regarding the refund ended. Second, we see no apparent "mock[ing]" of Mr. Kuhar in the assistant prosecutor's line of questioning. Although some of the questioning could be perceived as curt, the trial court was in the best position to determine if

the assistant prosecutor crossed any lines during his questioning of Mr. Kuhar. Third, assuming arguendo that the assistant prosecutor's questioning was improper, Mr. Kuhar was not prejudiced because (1) Mr. Wattenbarker had already testified that, to date, he had not received any refund from Mr. Kuhar and (2) this line of questioning actually allowed Mr. Kuhar to provide an explanation to the trial court as to why he *believed* he could not provide a refund to Mr. Wattenbarker. As such, this line of questioning in no way affected the outcome of the bench trial.

**{¶22}** Mr. Kuhar's second assignment of error is overruled.

<u>Assignment of Error Number Three</u>

THE TRIAL COURT ERRED IN FINDING [MR. KUHAR] GUILTY OF THE CHARGES BECAUSE THE STATE OF OHIO FAILED TO INTRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION.

**{¶23}** In his third assignment of error, Mr. Kuhar argues that his theft convictions, pursuant to R.C. 2913.02(A)(2) and (A)(3), are not supported by sufficient evidence. We disagree.

**{¶24}** "'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997), quoting *Black's Law Dictionary* 1433 (6th Ed.1990). "In essence, sufficiency is a test of adequacy." *Thompkins* at 386. When reviewing a conviction for sufficiency, evidence must be viewed in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d at paragraph two of the syllabus. The pertinent question is whether "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶25}** "Whether the evidence is legally sufficient to sustain a verdict is a question of law." *Thompkins* at 386, citing *State v. Robinson*, 162 Ohio St. 486 (1955). This Court, therefore, reviews questions of sufficiency de novo. *State v. Salupo*, 177 Ohio App.3d 354, 2008-Ohio-3721, ¶ 4 (9th Dist.).

**{¶26}** Mr. Kuhar was found guilty of violating R.C. 2913.02(A)(2) and (A)(3). R.C. 2913.02(A) states, in relevant part, that:

> No person, with purpose to deprive the owner of property * * *, shall knowingly obtain or exert control over * * * the property * * * in any of the following ways:
> * * *
> (2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent;
> (3) By deception[.]
> * * *

"A person acts purposely when it is [his] specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is [his] specific intention to engage in conduct of that nature." R.C. 2901.22(A). "A person acts knowingly, regardless of [his] purpose, when [he] is aware that [his] conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when [he] is aware that such circumstances probably exist." R.C. 2901.22(B).

**{¶27}** "'[F]or a violation of R.C. 2913.02(A)(2), the State must prove that at the time the defendant exceeded the scope of consent of the owner of the money, he had the intent to deprive the owner of the money.'" *State v. Chait*, 9th Dist. Medina No. 12CA0011-M, 2012-Ohio-6104, ¶ 7, quoting *State v. Coleman*, 2d Dist. Champaign No. 2002 CA 17, 2003-Ohio-5724, ¶ 29. Additionally, "[w]hen proving a violation of [theft by deception pursuant to] R.C.

2913.02(A)(3), the State must demonstrate that at the time the defendant took the money he had no intent to repay the money or perform under the contract in exchange." *Id.*

{¶28} Here, Mr. Kuhar argues that this matter should have been resolved civilly, as a breach of contract, and that the State failed to prove he acted with the necessary intent to commit the crimes of theft. In making this argument, Mr. Kuhar relies upon, inter alia, *State v. Chait*.

{¶29} In response, the State argues that the evidence in the record is sufficient to support Mr. Kuhar's convictions because it shows that, at the time he took Mr. Wattenbarker's money, Mr. Kuhar had no intent to repay the money or perform under the contract. Additionally, the State argues that the facts in *Chait* are easily distinguishable from the present matter.

{¶30} In *Chait* at ¶ 10, we detailed that the Porters hired Mr. Chait to remodel their garage into a living space to house additional elderly residents. Prior to the renovation, the garage consisted of "one room with drywall and insulation." *Id.* Further, it was "partially wired and had a bathroom area." *Id.* The Porters wanted to convert the garage into "a living area, which would include two bedrooms with closets, a family room, a laundry room, and an extended bathroom including a wheelchair-accessible shower." *Id.* The Porters asserted that they agreed to pay Mr. Chait $26,700 to complete the job in two to four weeks. *Id.* At the commencement of the project, the Porters gave Mr. Chait checks totaling $24,030 and, later, an additional check in the amount of $1,600 for electrical wiring. *Id.* at ¶ 11. Mr. Chait cashed all of the checks. *Id.* However, Mr. Chait failed to complete the job and the Porters "were dissatisfied with [his] quality of [] work," describing it as "shoddy and of poor quality." *Id.* at ¶ 12.

{¶31} Mr. Chait was convicted of theft pursuant to R.C. 2913.02(A)(2) and (A)(3). *Id.* at ¶ 6. In reversing Mr. Chait's convictions, we considered the "significant amount of work" done

in the Porters' garage, including, but not limited to: (1) framing, (2) drywall, (3) shower installation, (4) plumbing, (5) wiring, (6) window installation, and (7) leveling portions of the floor. *Id*. at ¶ 12. We reasoned that "[t]he fact that there was substantial evidence that Mr. Chait's workmanship was subpar, does not detract from the fact that labor and services were provided for the money that the Porters supplied." *Id*. at ¶ 21. We concluded that "[t]he State failed to produce sufficient evidence that Mr. Chait had the purpose to deprive the Porters of money or that, at the time he took the money, he had no intent to perform under the contract. * * * Moreover, the State failed to produce sufficient evidence of theft beyond the scope." *Id*.

{¶32} Unlike *Chait*, where a substantial amount of work was done on the Porters' garage renovation, this record indicates that no work was done on Mr. Wattenbarker's transmission after Mr. Kuhar received the $1,600 deposit. Mr. Wattenbarker testified that he mailed a $1,600 check to Mr. Kuhar as a down payment for a remanufactured Richmond transmission. The check was dated April 3, 2014, and was deposited on April 7, 2014, into Mr. Kuhar's account. Mr. Wattenbarker also testified that, prior to contacting the Medina police, he called Mr. Kuhar several times to check on the progress of his work. It was only after Mr. Kuhar stopped responding that Mr. Wattenbarker took further steps to address the issue. As of September 2014, Mr. Wattenbarker had not received a refund or a transmission. On cross-examination, Mr. Kuhar testified as follows:

> \* \* \*
> [The State]: \* \* \* You didn't rebuild the transmission, did you?
> [Mr. Kuhar]: No.
> [The State]: Didn't do any work on it at all?
> [Mr. Kuhar]: No.
> [The State]: Okay. So there's no labor. There's absolutely no labor, you did nothing on it. You sold it and you returned the other parts, correct?
> [Mr. Kuhar]: No, there's labor. There was labor involved.
> [The State]: You didn't rebuild the transmission, did you?
> [Mr. Kuhar]: I did not rebuild the transmission.

[The State]: Okay. You returned all of the parts that you bought?
[Mr. Kuhar]: Yes.
[The State]: And you sold the transmission that you allegedly bought?
[Mr. Kuhar]: Yes.
* * *

Detective Gross also testified that she met with Mr. Kuhar in July 2014 and encouraged him to contact Mr. Wattenbarker in order to resolve the matter. However, Detective Gross indicated that, as of Mr. Kuhar's arrest in September 2014, Mr. Wattenbarker still had not received anything for the $1,600 he gave to Mr. Kuhar.

{¶33} Viewing the evidence in a light most favorable to the State, there is sufficient evidence to support a finding that, at the time he took Mr. Wattenbarker's money, Mr. Kuhar did not intend to perform the transmission work or refund the money. As such, Mr. Kuhar intended to keep Mr. Wattenbarker's money. At the time of his arrest, Mr. Kuhar had possession of Mr. Wattenbarker's money for approximately five months. During that period of time, Mr. Kuhar had the opportunity to either rebuild the transmission or refund the money. However, even after a visit from Detective Gross, the record indicates that Mr. Kuhar did no work on the transmission, nor did he refund the money. Based upon these facts, a rational tier of fact could have found the essential elements of theft proven beyond a reasonable doubt. *See Jenks,* 61 Ohio St.3d at paragraph two of the syllabus.

III

{¶34} Mr. Kuhar's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

_____

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

---

BETH WHITMORE
FOR THE COURT

CARR, P. J.
MOORE, J.
CONCUR.

APPEARANCES:

CONRAD G. OLSON, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW A. KERN, Assistant Prosecuting Attorney, for Appellee.